21027

The STATE, Respondent, v. Charles R. SALTERS, Jr., and Larue D. Penny, Appellants.

(257 S. E. (2d) 502)

*Michael A. Pulliam,* of *Richardson, Plowden, Grier & Howser,* Columbia, *for appellant Salters.*

*Terrell L. Glenn* and *Peter Connor Murphy,* both of *Glenn, Porter & Sullivan,* Columbia, *for appellant Penny.*

*Atty. Gen., Daniel R. McLeod, Asst. Attys. Gen., Brian P. Gibbes* and *Kay G. Crowe,* and *Sol., James C. Anders,* Columbia, *for respondent.*

August 9, 1979.

RHODES, Justice:

Appellants were convicted by a jury on indictments charging arson, conspiracy to commit arson, and burning personal

property with the intent to defraud an insuurer. We reverse and remand for a new trial based upon the trial judge's refusal to poll the jury concerning prejudicial newspaper publicity during the trial.

Appellants' jury trial in Richland County commenced on Tuesday, June 7, 1977 and ended on Friday, June 10, 1977. The jury was not sequestered during the trial proceedings. Before dismissing the jury after the first day of trial, the judge instructed the members to neither listen to newscasts nor read any newspaper articles pertaining to the case.

On the first day of trial an article regarding appellants' alleged arson activity appeared in the *Columbia Record,* an afternoon daily circulating in Richland County. On the second morning of the trial a substantially similar article appeared in *The State,* another daily newspaper published in the county where the trial was being held.

In addition to fairly reciting the allegations of the indictments and the testimony from the first day of trial, the articles explained that appellants' charges were instituted as a result of statements made by a key prosecution witness, Barry Holloman, during a session of open court held the prior year. The pertinent substance of these two articles as reported in *The State* was as follows:

Charges were brought against Penny and Salters following Holloman's open court testimony last year that he "knew of an arson ring" in Richland County. He said, in exchange for a lighter sentence on a charge of housebreaking, he would give more information about the alleged "ring."

In court last year, Holloman said if the "job" on Penny's house had been successful, seven other houses in the Forest Acres area would have been "torched" to defraud insurance companies.

The account in the *Columbia Record,* although worded differently, contained the identical information including quoted references to an "arson ring."

On the morning the second article appeared, defense counsel moved that the court poll the jury to determine whether any of the members had read the articles. The court refused the request on the basis that the jury had been admonished on the evening before not to read any such articles and that the trial judge assumed that those instrutcions had been followed. Based upon the trial judge's further remarks, it appears that he did not examine the articles in question before denying the motion.

Appellants contend that both articles were prejudicial in nature and that it was error for the lower court not to poll the jury to ascertain whether the jurors had read them. We agree.

A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, U. S. Const. amend. VI; S. C. Const. art. I, § 14; and, in order to fully safeguard this basic protection, it is required that the jury render its verdict free from outside influences. *Sheppard v. Maxwell,* 384 U. S. 333, 86 S. Ct. 1507, 16 L. Ed. (2d) 600 (1966). As was succinctly summarized by *Sheppard:*

"The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print."

384 U. S. at 351, 86 S. Ct. at 1516, *quoting Patterson v. State of Colorado ex rel.Attorney General,* 205 U. S. 454, 462, 27 S. Ct. 556, 558, 51 L. Ed. 879 (1907).

In augmenting this fundamental constitutional protection, the Fourth Circuit has adopted a procedure requiring that "when highly prejudicial information may have been exposed to the jury, the court must ascertain the extent and effect of the infection, and thereafter, in its sound discretion take appropriate measures to assure a fair

trial." *U. S. v. Hankish,* 502 F. (2d) 71, 77 (4th Cir. 1974) *citing Margoles v. U. S.,* 407 F. (2d) 727 (7th Cir. 1969) ; *U. S. v. Accardo,* 298 F. (2d) 133 (7th Cir. 1962). In accord, this Court has approved a similar procedure whereby the trial judge conducts an inquiry or *voir dire* of the jury in order to discern if any prejudice or bias on their part has been generated by inflammatory news accounts published prior to or during the trial. *State v. Arnold,* 266 S.C. 153, 221 S. E. (2d) 867 (1976). *See also State v. Allen,* 266 S. C. 175, 222 S. E. (2d) 287 (1976) ; *State v. Crowe,* 258 S. C. 258, 188 S. E. (2d) 379 (1972), *cert. den.* 409 U.S. 1077, 93 S. Ct. 691, 34 L. Ed. (2d) 666. However, a jury need not be polled each and every time a newspaper article concerning a trial is brought to the court's attention. Such a protective measure is required only upon a reasonable showing of the potential prejudicial effect of the publicity. *See U. S. v. Jones,* 542 F. (2d) 186 (4th Cir. 1976) ; *U. S. v. Pomponio,* 517 F. (2d) 460 (4th Cir. 1975), *cert. den.* 423 U. S. 1015, 96 S. Ct. 448, 46 L. Ed. (2d) 386 (1975) ; *U. S. v. Hankish, supra.*

Relying upon *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607 (1967), the State contends that the articles were not prejudicial hence the failure to poll was of no consequence. We disagree.

The published articles in *Swilling* simply outlined the fact that the defendant was being retried because of the Supreme Court's reversal of his first conviction involving the same charges. Here, the alleged prejudicial news accounts alluding to an "arson ring" bring the character of the defendants into focus by implicating them in the commission of other crimes, conspiring to burn seven other residences, which were independent of and unconnected with the crime for which they were being tried. Character evidence of this nature has been repeatedly denied the jury except under extremely limited exceptions which have not here been shown applicable. *See State v. Rivers,* S. C., 254 S. E. (2d) 299

(1979) ; *State v. Lyle,* 125 S. C. 406, 118 S. E. 803 (1923). The obvious implications from such references to the appellants is highly prejudicial.

In substance, the articles recapitulated testimony from the prosecution's witness, Barry Holloman, which had been made in connection with his sentencing for housebreaking and larceny in 1976. The parties agree that at no time during Barry Holloman's testimony in the present case did he refer to an "arson ring", to the possibility of other homes being burned, or to his open court statement of the prior year. It is clear that these damaging portions of the articles in question never reached the jury through the normal channels of evidence.[1] As has been aptly observed, "[i]nformation denied the jury in the courtroom due to its prejudicial nature is still prejudicial although it may reach the jury through news accounts." *U. S. v. Pomponio, supra* at 463.

In the instant case, the trial judge did not take the initial step of ascertaining whether the articles were prejudicial. In effect, the court held that no matter what the articles said or how prejudicial they may be, it was bound to presume that the jury had followed its instructions. Under the circumstances of this case, the sole reliance by the trial judge on his admonition was insufficient to assure the appellants a fair trial. *Accord, State v. Keliiholokai,* 569 P. (2d) 891 (Haw. 1977). We refrain from speculating whether any of the jurors had read the articles in question. However, the availability of these articles without further inquiry is alone adequate to raise the potential of prejudice.

We conclude that when the articles were brought to the court's attention, as these were by the attorneys, the court should have made a determination as to whether the information was in fact prejudicial so as to

---

[1] The record does not support the State's contention that the jury was exposed to some of this evidence inasmuch as defense counsel's objections to this testimony were sustained at each instance.

measure the "extent of the infection", *U. S. v. Hankish, supra;* and, we accordingly hold that where, as here, the articles contained prejudicial matter, it was imperative that the trial judge inquire as to whether any of the jurors had seen the articles, and if they had, to invoke the appropriate curative measures. Due to the trial court's failure to observe these precautionary measures, we are compelled to reverse and remand this case for a new trial.

Appellants have raised several other exceptions regarding the conduct of their trial; however, in view of our foregoing decision, we need not reach these further issues.

Reversed and Remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.