0415

The STATE, Respondent, v. David Earl CARRIGAN, Appellant.

(328 S. E. (2d) 119)

Court of Appeals

*Kenneth E. Merriman,* Florence, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen., Harold M. Coombs, Jr.,* and *Staff Attys. Susan A. Lake* and *Amie L. Clifford,* Columbia; and *Sol. Dudley Saleeby, Jr.,* Florence, *for respondent.*

Heard Jan. 23, 1985.

Decided March 12, 1985.

SANDERS, Chief Judge:

Appellant David Earl Carrigan appeals his convictions for driving under suspension of license, driving in violation of the Habitual Traffic Offender Act, driving under the influence of intoxicants and reckless homicide. We affirm his convictions of the first two charges and reverse and remand for a new trial on the second two charges.

In the early morning hours, Carrigan, his wife Darlene and her cousin Doug Lupo were involved in a single vehicle accident while riding in a van. There was testimony that all three had been imbibing alcoholic beverages. The accident occurred during fair weather when the van overturned on a curve in a dirt road. Carrigan and Lupo were injured. Darlene was killed.

A highway patrolman, who investigated the accident at its scene, testified there was no evidence the van's brakes had been applied. He also testified to having received conflicting statements from the two survivors as to which occupant of the

van had been driving at the time of the accident. He said Carrigan told him Darlene was the driver, and Lupo said Carrigan had been driving. The patrolman further testified Carrigan was "highly intoxicated."

Lupo testified that Carrigan had been driving greatly in excess of the speed limit and too fast for the curve. He also testified that, after the accident, Carrigan had tried to get him to say Darlene had been driving, because he "didn't want to go to jail" and "they couldn't charge a dead person."

A technician at the hospital to which Carrigan was taken immediately following the accident testified that a blood sample drawn from him was tested, revealing a blood/alcohol content of "164 milligrams per deciliter." The technician confirmed "that is the same as point one-six-four of a breathalyzer test."

At trial, Carrigan stipulated that, prior to the accident, he had been adjudicated an habitual offender pursuant to the Act. He also apparently did not contest that his driver's license was suspended at the time.

Based on this evidence, the jury returned a verdict of guilty on all four charges.

We first address Carrigan's argument that the trial judge erred in refusing his motion for a mistrial.

During the course of the trial, it was reported to Carrigan's lawyer that a juror had spoken to a prosecuting witness. A motion for a mistrial was made based on this conversation. The trial judge inquired into the matter, identified the juror and questioned him. The juror admitted speaking to the witness regarding how the sister of the witness had improved her appearance by losing weight. The juror went on to say he had worked with the witness some four to six years earlier and had mentioned this fact to the other jurors. He denied having any conversation with the witness which related to the trial. He also denied that his view of the trial was influenced by his speaking to the witness. The trial judge excused this juror from further participation in the case and replaced him with an alternate, but refused Carrigan's motion for a mistrial.

A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, and in order to fully safeguard this protection, it is required that the jury render its verdict free from outside

influence. *State v. Salters*, 273 S. C. 501, 257 S. E. (2d) 502 (1979). Nevertheless, the mere fact that some conversation occurs between a juror and a witness for the State does not necessarily prejudice a defendant. *See State v. Goodwin*, 250 S. C. 403, 158 S. E. (2d) 195 (1967). The power to declare a mistrial is generally left to the sound discretion of the trial judge and ought to be exercised with the greatest caution, only for plain and obvious causes. *State v. Prince*, 279 S. C. 30, 301 S. E. (2d) 471 (1983).

Because of the benign nature of the conversation here, we hold that the trial judge did not abuse his discretion in refusing to grant Carrigan's motion.

We next address Carrigan's argument relating to his conviction on the charge of driving in violation of the Habitual Traffic Offender Act (sections 56-1-1010 to -1130, 1976 Code of Laws of South Carolina).

Section 56-1-1020 of the Act defines the terms of "habitual offender" and "conviction." Section 56-1-1100 of the Act makes it unlawful for a person to operate a motor vehicle while a judgment finding him to be an habitual offender is in effect. Carrigan argues that the trial judge erred in his instructions to the jury by reading section 56-1-1020, since he had stipulated his prior adjudication as an habitual offender, leaving as the only issue on this charge the question of whether he had been driving.

While it appears unnecessary for this section to have been read to the jury in view of Carrigan's stipulation, we conclude that he was not prejudiced by the trial judge's doing so. *Cf. State v. Seay*, 263 S. C. 496, 211 S. E. (2d) 649 (1975) (in a prosecution for failing to stop after being signaled by siren of law enforcement vehicle, court held, even if it was error to read to the jury statutes defining "authorized emergency vehicle" and providing that only such vehicles shall be equipped with a siren, defendant was not prejudiced).

For these reasons, we affirm Carrigan's convictions on the charges of driving under suspension and driving in violation of the Habitual Traffic Offender Act.

Finally, we address Carrigan's argument that he is entitled to a new trial on the charges of driving under the influence of intoxicants and reckless homicide. These charges are obviously related. Driving under the influ-

ence of intoxicants is evidence of driving in reckless disregard of the safety of others, which is an element of reckless homicide. *See State v. Jenkins,* 249 S. C. 570, 155 S. E. (2d) 624 (1967). Carrigan argues that the trial judge erred in his instructions to the jury by reading them subsections (a) and (b) of section 56-5-2950, 1976 Code of Laws of South Carolina. In order to fully address his argument, it is necessary that we examine this section, and its history, in some detail.

Section 56-5-2950 is entitled "Implied consent to chemical test to determine alcoholic content of blood. . . ." Subsection (a) provides, among other things:

> The test shall be administered at the direction of a law enforcement officer who has apprehended a person while driving a motor vehicle upon the public highways of this State while under the influence of intoxicating liquor. The test shall be administered by a person trained and certified by the South Carolina Law Enforcement Divison, using methods approved by the South Carolina Law Enforcement Division.

Subsection (b) provides further:

> In any criminal prosecution for the violation of § 56-5-2930 relating to driving a vehicle under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time of the alleged violation, *as shown by chemical analysis of the defendant's breath,* shall give rise to the following presumptions. . . . (Emphasis added.)

Subsection (b) goes on to provide for presumptions based on the alcohol found in a defendant's blood, among which is the presumption that

> (3) If there was at that time ten one-hundredths of one percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

> In our opinion, the trial judge erred in reading these subsections to the jury. It does not appear from the evidence that the test administered to Carrigan was at

the direction of the law enforcement officer who arrested him,

as required by subsection (a). Neither does it appear that the test was administered by a person trained and certified by the South Carolina Law Enforcement Division, using methods approved by that agency, as also required by subsection (a).

Even more significantly, it does not appear that the amount of alcohol in Carrigan's blood was shown by chemical analysis of his breath, as required by subsection (b). The history of this subsection further supports the conclusion that its present language limits the presumptions provided to those situations where the amount of alcohol in a defendant's blood is determined by a test of his breath, not his blood itself. Subsection (b) is a recodification of section 46-344 of the 1962 Code, as amended in 1969. Prior to the 1969 amendment, this section in part provided:

> In any criminal prosecution for the violation of § 46-343 relating to driving a vehicle under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time of the alleged violation, *as shown by chemical analysis of the defendant's blood,* urine, breath or other bodily substance, shall give rise to the following presumptions. . . . (Emphasis added.)

The amendment obviously eliminated a test of the blood and provided only for a test of the breath for the presumptions to arise.

Judicial analysis of a statute which provides for presumptions in a criminal case must be strict to insure that any conviction comports with the defendant's constitutional right of due process which requires proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *State v. Byrd,* 267 S. C. 87, 226 S. E. (2d) 244 (1976) (Ness, A. J., concurring), citing, *In re Winship,* 397 U. S. 358, 90 S. Ct. 1068, 25 L. Ed. (2d) 368 (1970). Where the language of a statute is clear and unambiguous, it requires no construction and must be literally applied. *Jones v. South Carolina State Highway Department,* 247 S. C. 132, 146 S. E. (2d) 166 (1966). In other words, it means what it says.

The state argues it would be absurd to hold that the presumptions provided by subsection (b) arise based only on a test of defendant's breath and not his blood. While we concede the logic of this argument, we must reject it.

This court has no legislative powers. In the interpretation of statutes our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature. We must do this based upon the words of the statutes themselves. To do otherwise is to legislate, not interpret. The responsibility for the justice or wisdom of legislation rests exclusively with the legislature, whether or not we agree with the laws it enacts. *Busby v. State Farm Mutual Automobile Insurance Company*, 280 S. C. 330, 312 S. E. (2d) 716 (App. 1984). A court may construe a statute by determining its meaning from the language used and its subject matter and purposes. However, there is a marked distinction between a court doing this and a court ingrafting upon a statute something the legislature has omitted from it, which the court believes ought to have been included. *Hatchett v. Nationwide Mutual Insurance Company*, 244 S. C. 425, 137 S. E. (2d) 608 (1964). The legislature in its wisdom and view of justice can again amend to its staute, but this court cannot.

For these reasons, we reverse Carrigan's convictions on the charges of driving under the influence of intoxicants and reckless homicide and remand for a new trial on these charges.[1]

We do not hold that the results of the blood test administered to Carrigan cannot be admitted against him on retrial. This is specifically allowed by the concluding paragraph of subsection (b) which provides:

> The provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor.

However, these results should be accompanied by appropriate expert testimony interpreting them, since the presumptions provided by subsection (b) would not apply.

Accordingly the convictions are

---

[1] In view of this result, it is unnecessary to address Carrigan's further argument that he is entitled to a new trial because the judge refused to strike the evidence of the blood test results on the ground that there was no expert testimony interpreting these results.

Affirmed in part, reversed in part and remanded.

GARDNER and BELL, JJ., concur.