STATE of Minnesota, Respondent,

v.

James Kevin CRANDALL, Appellant.

No. C5–89–1186.

Court of Appeals of Minnesota.

March 20, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., William T. Richardson, Asst. County Atty., Minneapolis, for respondent.

Deborah Ellis, Thomson & Ellis, Ltd., St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and LANSING and KLAPHAKE, JJ.

## OPINION

LANSING, Judge.

James Crandall appeals his conviction of criminal sexual conduct in the second degree, alleging that an alternate's inadvertent presence in the jury room following submission of the case to the jury constitutes reversible error.

## FACTS

James Crandall was charged in Hennepin County District Court with criminal sexual conduct in the first degree. At trial, the case was heard by 12 jurors and an alternate. Through inadvertence, the alternate was not discharged when the jury retired to consider its verdict. After the alternate had been with the jury in the jury room for approximately 20 minutes, the trial court discovered its mistake and the alternate was excused. Crandall promptly moved for a mistrial, which the trial court denied. The deliberations continued and approximately six and one-half hours later, the jury found Crandall guilty of criminal sexual conduct in the second degree.

In a post-trial motion, Crandall requested judgment of acquittal or, in the alternative, a new trial, assigning as error the presence of the alternate in the jury room following submission of the case to the jury. Crandall's motion was fortified by an affidavit sworn by his defense counsel. According to this affidavit, private investigators retained by the defense had contacted all of the jurors, as well as the alternate. Based on this investigation, the affiant expressed his belief that the alternate was present during deliberations and that the alternate had participated in the election of the foreperson and in the initial vote. The trial court denied Crandall's motion, and Crandall appeals.

## ISSUE

Did the presence of an alternate in the jury room after the case had been submitted for consideration create reversible error?

## ANALYSIS

It is undisputed that the trial court's inadvertent failure to discharge the alternate immediately following submission of the case to the jury violated the rules of criminal procedure. Under the applicable rule

an alternate juror who does not replace a principal juror shall be discharged after the jury retires to consider its verdict.

Minn.R.Crim.P. 26.02, subd. 8 (1988). The remedy which attaches to the breach of the rule is disputed and there is no direct precedent in Minnesota to resolve the issue.

■ Ordinarily, a criminal defendant seeking a new trial for an alleged defect in proceedings bears the burden of showing not only that there was a defect but that the defect was prejudicial. *State v. Sanders*, 376 N.W.2d 196, 204 (Minn.1985). Some errors in procedure, however, are so inherently prejudicial that a new trial is automatically granted. *Id.* at 205. There are also certain errors which, although not inherently prejudicial, are serious enough to trigger a presumption of prejudice. *Id.* at 205.

■ In our view, a trial court's inadvertent failure to promptly discharge an alternate upon submission of the case to the jury is not so serious that it should, in every situation, require an automatic retrial. For instance, if the mistake is discovered before jury deliberations begin, it would seem reasonable to require a defendant to show actual prejudice before reversal will be ordered. Few jurisdictions outside Minnesota have ruled otherwise. *See* 15 A.L.R. 4th 1127 (1988).

If the trial court's mistake is not discovered until after jury deliberations have commenced, it is more difficult to determine which approach to apply. There is no consensus among jurisdictions outside of Minnesota on which is the better approach. A dwindling majority of the jurisdictions considering this issue have ruled that automatic reversal is necessary. *See United States v. Beasley*, 464 F.2d 468, 470 (10th Cir.1972); *United States v. Virginia Erection Corp.*, 335 F.2d 868, 872–73 (4th Cir. 1964); *Jacksonville Racing Association, Inc. v. Harrison*, 530 So.2d 1001, 1004 (Fla. Dist.Ct.App.1988); *Com. v. Smith*, 403 Mass. 489, 531 N.E.2d 556, 559–61 (1988); *State Highway Commission v. Dunks*, 166 Mont. 239, 531 P.2d 1316, 1318 (1975); *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521, 533 (1975); *Commonwealth v. Krick*, 164 Pa.Super. 516, 67 A.2d 746, 749 (1949); *Patten v. State*, 221 Tenn. 337, 426 S.W.2d 503, 505–506 (1968).

A growing number of jurisdictions have chosen a presumption of prejudice approach instead. *See United States v. Watson*, 669 F.2d 1374, 1392 (11th Cir.1982); *People v. Boulies*, 690 P.2d 1253, 1255–56 (Colo.1984); *Johnson v. State*, 235 Ga. 486, 220 S.E.2d 448, 454 (1975); *State v. Scrivner*, 676 S.W.2d 12, 14 (Mo.Ct.App.1984); *State v. Coulter*, 98 N.M. 768, 652 P.2d 1219, 1221 (Ct.App.1982); *Yancey v. State*, 640 P.2d 970, 971 (Okla.Crim.App.1982); *State v. Cuzick*, 85 Wash.2d 146, 530 P.2d 288, 290 (1975). Finally, there is at least one jurisdiction which has imposed an affirmative duty upon the defendant to show actual prejudice. *Potter v. Perini*, 545 F.2d 1048, 1050 (6th Cir.1976).

We are disinclined to pursue an approach which would require an affirmative showing of prejudice. Such a requirement would be at odds with our Supreme Court's recognition that outside influence upon the jury is a serious matter. *See State v. Cox*, 322 N.W.2d 555 (Minn.1982); *State v. Mims*, 306 Minn. 159, 235 N.W.2d 381 (1975). We agree with the Fourth Circuit that

> the presence of the alternate in the jury room violate[s] the cardinal principle that the deliberations of the jury shall remain private and secret in every case. The presence of any person other than the jurors to whom the case has been submitted for decision impinges upon that privacy and secrecy.

*Virginia Erection Corp*, 335 F.2d at 872. Jury privacy, though not an end in itself, is vital to ensuring the integrity of the jury trial. The presence of an alternate in the jury room can inhibit free discourse among the jurors, either because the jurors fear that the alternate will publish their remarks or simply because they are distracted by the presence of anyone "not faced with the awful responsibility to decide." *Com. v. Smith*, 531 N.E.2d at 559; *Cuzick*, 530 P.2d at 290.

At the same time, because we are not convinced that an alternate's presence during jury deliberations is so inherently prejudicial that reversal is required on every occasion, we do not believe that "prejudice

per se" is the appropriate rule. It must be remembered that an alternate is not a total stranger to the jurors. Alternates are chosen in the same manner as jurors, subject to voir dire and peremptory challenge. Like jurors, alternates are required to hear the evidence and heed instructions from the court. This experience binds the alternate with the jurors and works to minimize any restraint on discourse which might be caused by the alternate's presence. *See Johnson v. Duckworth,* 650 F.2d 122, 125–26 (7th Cir.1981); *People v. Valles,* 24 Cal.3d 121, 125, 593 P.2d 240, 242–43, 154 Cal.Rptr. 543, 545 (1979).

■ The competing considerations persuade us that the presumption of prejudice approach best serves the interests of justice. It gives due consideration to the seriousness of the trial court's error without pointlessly vitiating the verdict in cases where no real prejudice has resulted. The presumption attaches once it is ascertained that the alternate was present with the jurors during their deliberation. The prosecution then bears the burden of showing that the trial court's error could not reasonably have affected the verdict. *See Cox,* 322 N.W.2d at 558. In determining whether the prosecution has met its burden, the trial court should consider the nature of the alternate's contact,[1] the number of jurors exposed to the contact, the weight of the evidence on the merits of the case, and the likelihood that prejudice was abated by curative measures. *Id.* at 559.

It is unclear from the record whether the alternate was present in the jury room during jury deliberations on Crandall's charges. We acknowledge the defense has produced an affidavit indicating that according to its private investigation of the jurors, the alternate was present during deliberations and even took part in the initial vote. Because the supreme court has unequivocally declared that harassment of jurors by private investigators is improper, we choose not to rely on this affidavit. *See Zimmerman v. Witte Transportation Co.,* 259 N.W.2d 260, 262–63 (Minn.1977);

*Schwartz v. Minneapolis Suburban Bus Company,* 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960).

■ Crandall's attorney should instead have requested an evidentiary hearing when he learned that the alternate had not been promptly discharged. Because this was not done, we remand for such a hearing. The trial court, with proper safeguards, should permit an examination to determine the nature of the alternate's contact with the jury. The inquiry should not improperly probe into the thought processes and mental operations of the jurors. *See* Minn.R.Evid. 606(b). If the trial court determines that the alternate was present with the jurors during deliberation, it should apply the presumption of prejudice approach which we have outlined.

## DECISION

The trial court erred in failing to discharge the alternate immediately after the jury had retired to consider its verdict. We remand for an evidentiary hearing to determine the nature of the alternate's subsequent interaction with the jury. If the alternate was present in the jury room during deliberations, there is a presumption that the defendant incurred prejudice.

Remanded.

---

1. This includes the length and proportion of time that the alternate was present and also any active participation by the alternate in the deliberative process.