■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL SANTANA, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Curci, J.), rendered March 20, 1987, convicting him of murder in the second degree and criminal possession of a weapon in the second degree under indictment No. 5786/85, upon a jury verdict, and an amended judgment of the same court, also rendered March 20, 1987, revoking a sentence of probation previously imposed by the same court (Leahy, J.) under indictment No. 1139/81 upon a finding that he had violated a condition thereof, upon his plea of guilty, and imposing a sentence of imprisonment upon his prior conviction of criminal possession of a weapon in the third degree.

Ordered that the judgment under indictment No. 5786/85 is reversed, on the law, and a new trial is ordered; the facts have been considered and determined to have been established; and it is further,

Ordered that the amended judgment under indictment No. 1139/81 is reversed, on the law, the defendant's plea of guilty to a violation of probation is vacated and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent herewith.

The evidence adduced by the prosecution witnesses at trial established that on the evening of the shooting, the victim, Jesus Sanes, was attempting to visit Anna Guerra, the teenage mother of his son at the apartment of Anna's aunt, Yvonne Vasquez. The defendant resided in the apartment directly across the hall and was married to another of Guerra's aunts. Vasquez and a male friend, Angel Calderon, refused to allow Sanes to enter Vasquez's apartment and a verbal argument ensued in the hallway. The defendant opened the door of his apartment and inquired if there was any problem. Vasquez assured the defendant that she could handle it. The defendant went back inside his apartment and closed the door. The argument between Sanes and Vasquez continued. In a few minutes, the defendant exited his apartment and, employing profanities, ordered Sanes to get out of the building. According to Calderon, the defendant first asked,

"How many bodies do I have to kill?" before ordering Sanes to leave. When the unarmed Sanes asked the defendant what he was going to do about it, the defendant drew a handgun and aimed it at Sanes, who was about four feet away from the defendant. Calderon, Vasquez and Anna, who had been standing in the open doorway to Vasquez's apartment, were also in the line of fire. Sanes and the defendant then went toward each other. Before Calderon pushed Vasquez and Anna inside the apartment and closed the door, Vasquez saw Sanes grab the defendant's wrists. About 3 to 5 seconds after the prosecution witnesses had retreated to safety behind the apartment door, they heard one shot fired. When Vasquez opened her door, she saw Sanes lying face down on the staircase and the defendant running down the stairs. Sanes had been mortally wounded from a bullet that struck him on the left side of the head. According to the assistant medical examiner, the gun had been discharged an inch from Sanes' head.

We find that the foregoing circumstantial evidence was legally sufficient to establish that the defendant acted recklessly with depraved indifference to human life *(see, People v Marsh,* 140 AD2d 631; *People v Languena,* 129 AD2d 587). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (CPL 470.15 [5]). Regardless of whether the defendant accidentally or intentionally discharged the gun during the struggle with Sanes, albeit without the specific intent to cause death, the jury could make a "qualitative judgment" under the circumstances of this case that the defendant's reckless act "placed the crime upon the same level as the taking of life by premeditated design" *(People v Register,* 60 NY2d 270, 274). The defendant's conduct in drawing a loaded, operable gun in close proximity to the unarmed victim and taking aim in an offensive, rather than a defensive, posture presented a grave risk of death and, thus, the gun's discharge, though reckless, "was equal in blameworthiness to intentional murder" *(People v Register, supra,* at 275; *cf., People v Magliato,* 110 AD2d 266, *affd* 68 NY2d 24).

The defendant's conviction under indictment No. 5786/85 must be reversed and a new trial ordered, however, because the trial court erroneously granted the alternate jurors permission to dine with the 12 regular jurors after deliberations had commenced, in violation of CPL 270.30 and CPL 310.10 *(see, People v King,* 13 AD2d 264, 268; *see also, People v Cocco,* 305 NY 282; Annotation, *Presence of Alternate Juror in Jury Room as Ground for Reversal of State Criminal Conviction,* 15

ALR4th 1127; Annotation, *Constitutionality and Construction of Statute or Court Rule Relating to Alternate or Additional Jurors or Substitution of Jurors During Trial,* 84 ALR2d 1288). We reject the People's argument that this error cannot be reviewed due to the defendant's failure to object at trial. "Errors which ' "affect the organization of the court or the mode of proceedings prescribed by law" ' need not be preserved and, even if acceded to, still present a question of law" for appellate review *(People v Coons,* 75 NY2d 796, 797, quoting *People v Patterson,* 39 NY2d 288, 295, *affd* 432 US 197; *People v Ahmed,* 66 NY2d 307, 310).

Additionally, the trial court erred in curtailing defense counsel's cross-examination of the prosecution witnesses regarding whether or not Vasquez had informed Sanes that he could only come into her apartment over her dead body. This statement is not hearsay because it was not being offered for the truth of the facts asserted in the statement *(see,* Richardson, Evidence §§ 200, 203 [Prince 10th ed]), but merely to show that the statement was made in order for the jury to weigh, in context, contradictory testimony that it was the victim Sanes, and not the defendant, who inquired, "How many bodies do I have to kill?"

Lastly, the defendant's plea of guilty to a violation of probation must be vacated, since the violation was predicated upon his conviction for depraved indifference murder and criminal possession of a weapon in the second degree, which are hereby reversed for trial errors. Furthermore, the defendant's plea of guilty was expressly conditioned on the negotiated agreement that he would receive a sentence to run concurrently with the sentences imposed for the aforenoted convictions. Thus, in order to give effect to the plea commitment, the plea must be vacated in its entirety *(see, People v Clark,* 45 NY2d 432, 440). Brown, J. P., Kooper, Rubin and Harwood, JJ., concur.