493 S.E.2d 865

**The STATE, Respondent**

**v.**

**Gary GROVENSTEIN, Appellant.**

**No. 2736.**

Court of Appeals of South Carolina.

Heard April 9, 1997.
Decided Oct. 20, 1997.
Rehearing Denied Dec. 19, 1997.

J. Edward Bell, III, of Bell & Moore, Sumter; and Robert J. Harte, Aiken, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Barbara R. Morgan, Aiken, for respondent.

CONNOR, Judge:

Gary Grovenstein appeals his convictions for two counts of criminal sexual conduct with a minor, first degree, and one count of criminal sexual conduct with a minor, second degree. He argues the trial judge abused his discretion in denying his motion for a mistrial because the presence of an alternate juror in the jury room while the jury deliberated violated his right to trial by an impartial jury of no more than twelve and caused actual prejudice to his defense. We reverse and remand.

## FACTS

After instructing the jury on the law, the judge sent the jury to the jury room at 10:01 a.m. The judge then talked with the attorneys. Subsequently, the judge directed the jury

to begin their deliberations. At about 10:30 a.m., the judge discovered the alternate juror, Sheila Coleman, had not been dismissed.

Thereafter, the judge questioned Coleman concerning her participation with the jury. Coleman testified she participated in the preliminary vote, which she interpreted as a "where do you stand" vote. When asked whether she discussed the case, Coleman responded "Yeah, I [sic] little bit. Not much." She further testified she had voiced her opinion to the other jurors.

Grovenstein's attorney moved for a mistrial. The judge denied the motion.

At 11:08 a.m., the jury panel returned to the courtroom. The judge instructed the jurors in part:

... it is your responsibility, Mr. Foreman and the remaining ... the twelve members of the jury, to make this decision as to the innocence or the guilt of the defendant on each indictment without regard to anything Ms. Coleman may or may not have done during the course of any preliminary deliberations. So, the instruction to you, ladies and gentleman, is that you should make your decision based upon the evidence in the case, that you should make your decision ... the twelve of you should make this decision and it must be a unanimous decision on each indictment.

The judge then questioned the jurors as follows:

Mr. Foreman and ladies and gentlemen of the jury, is there any member of the jury panel who feels that they can not follow that instruction or have been influenced by any ... in any manner by Ms. Coleman while she was in the jury room for some twenty to thirty minutes? Any member of the jury panel feel that they would be influenced by her presence or any action in the jury room? If so, I want you to tell me now because I need to know that. Anyone?

(No response).

Any member of the jury panel has any difficulty in disregarding the fact ... any action, or word, or deed done during the ... while she was in the jury room during that twenty to thirty minute period of time? Any juror can not disregard that?

(No response)

Any juror ... and I'm assuming no response means you can do that. Any member of the jury panel who can not follow the instruction that you twelve must make a unanimous decision in this case? If so, please indicate now.

(No response)

Grovenstein's attorney indicated he did not object "as to the contents of the instructions." After the jury was returned to the jury room at 11:15 a.m., Grovenstein's attorney renewed his motion for a mistrial. The judge denied his motion.

The jury returned its verdict at 3:45 p.m. Subsequently, the judge polled the jury, and each juror assented to the verdict. Then, Grovenstein's attorney renewed his motion for a mistrial, and in the alternative, moved for a new trial. The judge denied both motions.

## DISCUSSION

In *State v. Bonneau*, 276 S.C. 122, 276 S.E.2d 300 (1981), our Supreme Court considered the question of whether the fact that an alternate juror was in the jury room briefly after the judge completed his charge denied the defendant a fair trial.

In *Bonneau*, the trial judge charged the law to the jury, including the alternate juror. Pursuant to S.C.Code Ann. § 17–23–100 (1985), the trial judge excused the jury, including the alternate juror, in order for the attorneys to express their objections to the charge.[1] The judge instructed the jurors they were not to begin their deliberations until he had a chance to talk with the attorneys and to send in the indictment and exhibits. At 3:33 p.m., the jury and the alternate juror were sent to the jury room. They were called back into the courtroom at 3:43 p.m. or 3:44 p.m. At that time, the trial

---

1. S.C.Code Ann. § 17–23–100 (1985) provides:

In all cases tried before a jury, other than cases in a magistrate's or municipal court, after the court has delivered to the jury a charge on the law of the case, the court shall temporarily excuse the jury from the presence of counsel and litigants in order to give counsel and litigants an opportunity to express objections to the charge or request the charge of additional propositions made necessary by the charge, out of the presence of the jury.

judge excused the alternate juror. The defense counsel requested, but was denied, a mistrial on the ground that the alternate juror had not been timely discharged. The jury returned a guilty verdict at 4:30 p.m. The judge denied defense counsel's motion for a new trial.

The Supreme Court held Bonneau had a fair trial. In reaching its decision, the Court acknowledged that a majority of other jurisdictions had held the intrusion into the jury room by persons other than the twelve jurors is sufficient to make a verdict questionable and require a new trial. *Bonneau*, 276 S.C. at 125, 276 S.E.2d at 301. The Court also noted that in some jurisdictions the courts approved a proceeding whereby the judge inquired of the jurors concerning the extent of the participation of the intruder. *Id.* The Court found under the facts of this case a new trial was not required. *Id.* It reasoned that "[t]his case is akin to those holding that the fact that an alternate juror may have been with the jury momentarily is no justification for invalidating the verdict ultimately reached." *Id.* at 125, 276 S.E.2d at 301–02.

Although *Bonneau* provides guidance in reaching our decision, we do not find its holding dispositive. The instant case is factually dissimilar. In this case, unlike *Bonneau*, the trial judge instructed the jurors, including the alternate juror to begin deliberations. Ms. Coleman was present in the jury room for approximately thirty minutes, which was significantly longer than in *Bonneau*. Moreover, unlike the alternate juror in *Bonneau*, Coleman participated in the deliberations and the preliminary vote. Coleman also testified she voiced her opinion to the other jurors.

Because we view *Bonneau* to be limited to a factual situation involving the inadvertent and momentary presence of an alternate juror in the jury room, we look to other jurisdictions for guidance. A review of other jurisdictions reveals three primary approaches to the presence of an alternate juror during jury deliberations: 1) fundamental error requiring reversal per se; 2) a presumption of prejudice; and 3) the defendant's burden to prove prejudice. *See* Michelle Migdal Gee, Annotation, *Presence of Alternate Juror in Jury Room As A Ground for Reversal of State Criminal Conviction*, 15

A.L.R.4th 1127 (1982 & Supp.1996); 75B Am.Jur.2d *Trial* § 1664 (1992 & Supp.1997).

S.C.Code Ann. § 14-7-1340 (1976), provides that alternate jurors may be selected. It further states that alternate jurors "shall be discharged upon the final submission of the case to the jury." Accordingly, we focus our review on jurisdictions in which there exists a statute or rule that provides for the mandatory dismissal of alternate jurors after the case has been finally submitted to the jury for its consideration.

There is a split of authority in those jurisdictions which follow a rule or statute similar to South Carolina's statute. Some jurisdictions hold the presence of an alternate juror in the jury room during deliberations constitutes a fundamental error and requires reversal per se. *See Berry v. State*, 298 So.2d 491 (Fla.Dist.Ct.App.1974); *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975); *Yancey v. State*, 640 P.2d 970 (Okla.Crim.App.1982); *Patten v. State*, 221 Tenn. 337, 426 S.W.2d 503 (1968).

The rationale for adopting the reversible error per se rule is illustrated by the decision of the North Carolina Supreme Court in *Bindyke*, 220 S.E.2d 521. In *Bindyke*, the jury retired to the jury room to begin their deliberations after the trial judge's instructions. The judge inadvertently failed to dismiss the alternate juror, who accompanied the jury into the jury room for approximately three to four minutes. After the alternate juror's presence was discovered, the judge dismissed the alternate juror and instructed the jury to resume their deliberations. The judge did not inquire whether the jury had begun to deliberate.

In reaching its decision to adopt the reversible error rule, the North Carolina Supreme Court found the presence of an alternate in the jury room during deliberations negated a defendant's right to a trial by a jury of twelve in the "inviolability, confidentiality, and privacy of the jury room." *Bindyke*, 220 S.E.2d at 533. Equally important, the Court stated public policy and practical considerations precluded a hearing to determine whether the alternate's presence in the jury room during deliberations affected the jury's verdict or prejudiced the defendant. *Id.* Specifically, the Court was concerned that an adequate standard could not be devised to determine

whether the alternate's presence affected the jury. *Id.* Additionally, the Court felt "an inquiry into what transpired in the jury room during the alternate's presence itself invades the sanctity, confidentiality, and privacy of the jury process and gives the appearance of judicial interference with the jury." *Id.*

Other jurisdictions do not agree with the reversible error per se approach and hold an alternate's presence in the jury room during deliberations constitutes a presumption of prejudice which the State may attempt to rebut. *See People v. Boulies*, 690 P.2d 1253 (Colo.1984) (en banc); *Bowyer v. United States*, 422 A.2d 973 (D.C.1980); *State v. Crandall*, 452 N.W.2d 708 (Minn.Ct.App.1990); *State v. Scrivner*, 676 S.W.2d 12 (Mo.Ct.App.1984); *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991); *State . v. Coulter*, 98 N.M. 768, 652 P.2d 1219 (App.1982); *State v. Cuzick*, 85 Wash.2d 146, 530 P.2d 288 (1975) (en banc).[2]

For example, in *State v. Crandall*, 452 N.W.2d 708 (Minn. Ct.App.1990), the Minnesota Court of Appeals specifically rejected the reversible error per se approach, stating "we are not convinced that an alternate's presence during jury deliberations is so inherently prejudicial that reversal is required on every occasion." *Id.* at 710. The Court reasoned that because an alternate is not a total stranger to the jurors, "[t]his experience binds the alternate with the jurors and works to minimize any restraint on discourse which might be caused by the alternate's presence." *Id.* at 711. The Court adopted the presumption of prejudice standard because "[i]t gives due consideration to the seriousness of the trial court's error

---

2. Although not identical to South Carolina's statute, it is also instructive to note there exists a split of authority in jurisdictions governed by a statute or rule which expressly prohibits alternate jurors from retiring to the jury room with the regular jury or from participating in the deliberations. Some jurisdictions hold the presence of an alternate juror in the jury room constitutes reversible error per se. *See Commonwealth v. Sheehy*, 412 Mass. 235, 588 N.E.2d 10 (1992); *People v. Santana*, 163 A.D.2d 495, 558 N.Y.S.2d 172 (1990), *aff'd*, 78 N.Y.2d 1027, 576 N.Y.S.2d 208, 582 N.E.2d 591 (1991); *Commonwealth v. Krick*, 164 Pa.Super. 516, 67 A.2d 746 (1949). However, other jurisdictions follow the presumption of prejudice analysis. *See State v. Newsome*, 259 Ga. 187, 378 S.E.2d 125 (1989); *State v. Grant*, 221 Mont. 122, 717 P.2d 562 (1986).

without pointlessly vitiating the verdict in cases where no real prejudice has resulted." *Id.*

In *Crandall,* the Court set forth the procedure to be followed by a trial court in applying this approach. The Court held that when the trial court ascertained an alternate was present during the jury deliberations, a presumption of prejudice attached. The State then bears the burden of showing the trial court's error in allowing the alternate to deliberate with the panel could not reasonably have affected the verdict. *Id.* The Court stated:

> In determining whether the prosecution had met its burden, the trial court should consider the nature of the alternate's contact, the number of jurors exposed to the contact, the weight of the evidence on the merits of the case, and the likelihood that prejudice was abated by curative measures.

*Id.*

The above cases involve the decisions of state courts applying state procedural rules and legislation. The third approach, in which the burden is on the defendant to prove prejudice, may be found in federal cases, applying federal rules. Like South Carolina's statute, Rule 24(c) of the Federal Rules of Criminal Procedure, mandates the dismissal of an alternate juror after the jury retires to consider its verdict.[3] Therefore, we consider this third approach. *See Biales v. Young,* 315 S.C. 166, 169, 432 S.E.2d 482, 484 (1993) (federal precedent, although not binding, may be applied as guidance in interpretation).

In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the United States Supreme Court addressed the presence of an alternate juror in the jury room during deliberations under the Federal Rules of Criminal Procedure. In *Olano,* two alternate jurors were permitted to retire with the jury, but were cautioned not to participate in the discussions. However, they were present throughout the jury's deliberations. Because the defendant failed to object to the presence of the alternates, the Supreme Court considered

---

**3.** Rule 24(c), Fed.R.Crim.P., provides in pertinent part:

An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.

the matter under the "plain error" rule set forth in Rule 52(b) of the Federal Rules of Criminal Procedure.[4]

In *Olano*, the Court focused on the question of whether the error affected substantial rights within the meaning of Rule 52(b). The Court noted in theory the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: (1) either because the alternates actually participated in the deliberations, verbally or through "body language"; or (2) the alternates' presence exerted a "chilling" effect on the regular jurors. *Id.* at 739, 113 S.Ct. at 1780–81. However, the Court concluded the defendants had not met their burden of showing the error resulted in prejudice. *Id.* at 741, 113 S.Ct. at 1781. The Court noted there was no showing that the alternates either participated in or "chilled" the deliberations by the jurors. *Id.* at 739, 113 S.Ct. at 1780–81. Moreover, the Court did not presume prejudice from the mere presence of jurors who had been instructed not to participate in the deliberations. *Id.* at 740, 113 S.Ct. at 1781.

A number of federal courts have applied the *Olano* analysis. In *United States v. Ottersburg*, 76 F.3d 137 (7th Cir.1996), the Seventh Circuit Court of Appeals reversed the defendant's convictions where two alternate jurors participated in the jury deliberations and signed the verdict forms.

In *Ottersburg*, the trial judge instructed the jury, including the alternates. When the jury retired, the judge neglected to dismiss the two alternates and permitted them to retire with the jury to deliberate. The jury returned a verdict after more than nine hours of deliberation. The alternates had not signed the verdict form. The judge instructed all fourteen jurors to return to the jury room so that the alternates could sign the verdict forms. The jury acquitted Ottersburg on one of the charges, but convicted him on the others. The jury, including the alternates, were polled. Ottersburg never objected to the alternates' participation during the jury deliberations. Because Ottersburg did not object, the Court considered the case under the "plain error" standard of Rule 52(b) of the Federal Rules of Criminal Procedure. The Court re-

---

4. Rule 52(b), Fed.R.Crim.P., provides:

   PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

versed the convictions, stating "[a]lthough *Olano* indicates that the substantive participation of the alternates, once established, is sufficient to establish prejudice, we hasten to add that, in this case, other factors also compel the conclusion that the jury's verdict cannot be relied upon." *Id.* at 140.

In *United States v. Houlihan,* 92 F.3d 1271 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997), the trial court, despite defendant's objections, refused to discharge the alternate jurors once deliberations commenced and allowed the alternates to have intermittent contact with the regular jurors during deliberations. However, the alternates were never in physical proximity to the regular jurors while they were deliberating. Moreover, when the alternates had contact with the regular jurors, there was no discussion of the substance of the case. Additionally, the court instructed the jurors not to discuss the case with the alternates and not to deliberate in their presence. The court also instructed the alternates not to discuss the case among themselves or with the regular jurors. The regular jurors retired to the jury room and the alternates retired to another room. Based on these facts, the First Circuit Court of Appeals concluded the defendant did not suffer prejudice from the trial court's failure to dismiss the alternate jurors when the jury first retired to deliberate. *Id.* at 1288. The Court distinguished *Ottersburg* in that in the instant case the alternate jurors were not permitted to sit in on or listen to the jury's deliberations. As such, the alternates had no opportunity to participate in the deliberations. *Id.* at 1287.

In *United States v. Hill,* 91 F.3d 1064 (8th Cir.1996), the district court inadvertently allowed an alternate juror to deliberate with the jury during the first two and one-half hours of deliberations. Upon discovering the alternate was with the jury, the court removed the alternate and allowed the jury to continue deliberating. Because the defendant did not object to the presence of the alternate juror, the Eighth Circuit Court of Appeals applied the plain error analysis of *Olano.* The Court concluded Hill was not entitled to a new trial because it would not presume the alternate's presence prejudiced Hill. *Id.* at 1072.

In *United States v. Molinaro*, 11 F.3d 853 (9th Cir.1993), the district court granted the defendants' request to permit the alternate jurors to remain in the jury room during the deliberations. The court instructed the alternates not to participate in the deliberations and not to indicate their views. Applying *Olano*, the Ninth Circuit Court of Appeals concluded the appellants failed to demonstrate prejudice from the alternates' presence. *Id.* at 864.

Our research reveals that *United States v. Ottersburg*, 76 F.3d 137 (7th Cir.1996), is the only reported criminal case, subsequent to *Olano*, in which a federal appellate court reversed a verdict based on the trial court's failure to discharge the alternate juror.[5] However, it is apparent from the cases discussed that the federal courts have consistently found that an alternate juror's actual participation in the jury's deliberation constitutes prejudice.

■ After considering the decisions of other jurisdictions, as well as *Olano* and its progeny, we are persuaded by the decisions of those state courts which apply the presumption of prejudice analysis when an alternate juror is present during jury deliberations.

■ We find the presumption of prejudice approach is consistent with S.C. Const. art. I, § 14, which provides in pertinent part, "The right of trial by jury shall be preserved inviolate. Any person charged with an offense shall enjoy the right to a speedy and public trial by an impartial jury...." Although an alternate juror has the same duties as the other jurors during a trial, S.C.Code Ann. § 14–7–1340 (1976) provides an alternate juror "shall be discharged upon the final submission of the case to the jury." As such, once discharged, an alternate no longer maintains the status of a juror who should participate in the jury's discussions. Therefore, an alternate juror's presence in the jury room during the deliberations of the jury violates a defendant's right to trial by an

---

5. At least one state court has applied *Olano* and reached the same result as the Court in *Ottersburg*. *See People v. Babbington*, 286 Ill. App.3d 724, 222 Ill.Dec. 122, 676 N.E.2d 1326 (1997) (despite defendant's failure to object, an alternate juror's participation in deliberations, signing of the verdict forms, and participation in polling of the jury, denied defendant his right to a fair trial).

impartial jury and prejudice is presumed. *See State v. Salters,* 273 S.C. 501, 504, 257 S.E.2d 502, 504 (1979) (A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, and in order to fully safeguard this protection, it is required that the jury render its verdict free from outside influence.).

However, an alternate's presence during jury deliberations may not necessarily be so prejudicial that reversal is required in every case. To find otherwise would be in clear contravention of our Supreme Court's decision in *Bonneau.*[6] In concluding Bonneau had not been denied a fair trial, the Court specifically stated, "[t]o hold otherwise would substitute form for substance. It would necessitate a new trial based on the most flimsy of technicalities." *Bonneau,* 276 S.C. at 126, 276 S.E.2d at 302. We interpret *Bonneau* as an implicit rejection of the reversible error per se rule.

Moreover, we find the presumption of prejudice analysis is consistent with our cases which involve improper communication with the jury or other forms of external influence. Although these cases are distinguishable from a case involving the presence of an alternate juror during jury deliberations, the procedure employed by the trial judge in these cases is analogous to the presumption of prejudice approach. *See, e.g., State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989) (trial judge's refusal to grant a mistrial was not an abuse of discretion where two jurors admitted to reading a related newspaper article, but stated they had discussed the article with their fellow jurors after they had voted on the issue of guilt or innocence); *State v. Carrigan,* 284 S.C. 610, 328 S.E.2d 119 (Ct.App.1985) (trial judge's refusal to grant a mistrial due to juror's conversation with State witness was not an abuse of discretion where juror admitted to speaking to witness, but denied the conversation related to the trial and that it influenced his view of the trial).

Because the jury in this case had been instructed by the trial judge to begin deliberations, had begun to deliberate, and

---

**6.** In *Bonneau,* the Supreme Court found the alternate's brief presence in the jury room was "at most an irregularity in contravention of the statute," but was not "an irregularity of constitutional dimensions." *Bonneau,* 276 S.C. at 126, 276 S.E.2d at 302.

had taken a preliminary vote, we find Coleman's presence in the jury room requires reversal. We cannot conclude from the other twelve jurors' silence during the trial judge's questions that they were not directly or indirectly influenced by Coleman's opinion. As such, the State did not meet its burden of rebutting the presumption of prejudice.

In light of our decision, we need not address Grovenstein's remaining issues.

Accordingly, the decision of the circuit court is

REVERSED AND REMANDED.

GOOLSBY and HUFF, JJ., concur.