517 S.E.2d 216

The STATE, Petitioner,

v.

Gary GROVENSTEIN, Respondent.

No. 24933.

Supreme Court of South Carolina.

Heard March 4, 1999.

Decided June 1, 1999.

Rehearing Denied June 1, 1999.

348

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General G. Robert DeLoach, III, all of Columbia, and Solicitor Barbara R. Morgan, of Aiken, for petitioner.

J. Edward Bell, III, of Bell and Moore, of Sumter, and Robert J. Harte, of Aiken, for respondent.

## ORDER

The opinion heretofore filed in this case, Opinion No 99–86 24933, filed April 19, 1999, is withdrawn and the attached opinion is substituted in its place. Respondent's Petition for Rehearing is denied.

/s/ Jean H. Toal, Acting C.J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

/s/ James C. Williams, Jr., J.

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Grovenstein,* 328 S.C. 548, 493 S.E.2d 865 (Ct.App.1997). We reverse.

## FACTS

Grovenstein was convicted of two counts of first degree criminal sexual conduct (CSC) with a minor and one count of second degree CSC with a minor; he was sentenced to a total of forty years imprisonment.

At the conclusion of Grovenstein's trial, the jury was sent to the jury room to begin deliberations. Twenty to thirty minutes later, it was discovered that the alternate juror, Sheila Coleman, had been sent to the jury room with the remaining jurors.[1] She was removed and questioned by the trial court. She advised the judge that the jury had taken one "preliminary vote" as to where everybody was going to stand, and in which she had participated. Coleman also advised the court the jury had discussed the case in her presence, "a little bit... not much."

The trial court called the remainder of the jury to the courtroom and instructed them that the alternate should have been removed, and that it was the remaining jurors' responsibility to reach a verdict without regard to anything the

---

1. S.C.Code Ann. § 14–7–1340 (1976) requires that "alternate jurors shall ... be discharged upon the final submission of the case to the jury."

alternate had said or done. The court then inquired as follows:

> Is there any member of the jury panel who feels they can not follow that instruction or have been influenced by any ... in any manner by Ms. Coleman while she was in the jury room for some twenty to thirty minutes? Any member of the jury panel feel that they would be influenced by her presence or any action in the jury room? If so, I want you to tell me now because I need to know that. Anyone? (No Response).
>
> Any member of the jury panel has any difficulty in disregarding the fact... any action, or word, or deed done during the ... while she was in the jury room during that twenty to thirty minute period of time? Any juror can not disregard that?
>
> (No Response).
>
> Any juror... and I'm assuming no response means you can do that. Any member of the jury panel who can not follow the instruction that you twelve must make a unanimous decision in this case? If so, please indicate now.
>
> (No response).

Both the defense and the state declined the court's invitation for further inquiry or instructions. The jury was returned to the jury room at 11:15 am and, four and one-half hours later, returned with guilty verdicts at 3:45 PM.

The Court of Appeals reversed Grovenstein's convictions, finding the presence of the alternate juror in the jury room during deliberations entitled him to a presumption of prejudice which the State had failed to rebut.

## ISSUES

1. Did the Court of Appeals properly adopt a "presumption of prejudice" analysis?
2. Were the trial court's curative measures sufficient to remedy any error?

## 1. PRESUMPTION OF PREJUDICE

■ In *State v. Bonneau,* 276 S.C. 122, 276 S.E.2d 300 (1981), this Court held it was "incumbent on the appellant to

... prove that he was denied a fair trial" due to an alternate's presence in the jury room. The Court of Appeals found *Bonneau* factually dissimilar such that it was not dispositive.

In *Bonneau*, the trial court instructed jurors not to begin deliberations until it had sent in the indictments and exhibits. The jury, including the alternate, was then sent out of the courtroom for approximately 10–15 minutes while the court discussed its charge with the attorneys. The defendant appealed, contending the presence of the alternate had deprived him of a fair trial. This Court held the alternate's brief presence had not deprived Bonneau of a fair trial, noting that the remaining members of the jury had continued to deliberate 45 minutes after the alternate was excused. Significantly, in *Bonneau*, we recognized, but rejected, authority in other jurisdictions holding the presence of an alternate juror to be *per se* reversible error. Although the Court of Appeals recognized *Bonneau* as "an implicit rejection of the reversible error per se rule," 328 S.C. 548, 493 S.E.2d at 871, it nonetheless saw fit to apply a presumption of prejudice to Grovenstein. This is simply in contravention of *Bonneau's* specific holding that it is incumbent on the defendant to demonstrate he was denied a fair trial by the presence of an alternate. We see no reason to limit *Bonneau's* basic holding that a defendant must establish prejudice. We have consistently required defendants to demonstrate prejudice due to improper jury influences.[2]

---

2. The Court of Appeals, citing *State v. Wasson*, 299 S.C. 508, 386 S.E.2d 255 (1989) and *State v. Carrigan*, 284 S.C. 610, 328 S.E.2d 119 (Ct.App. 1985), found a presumption of prejudice analysis consistent with other South Carolina cases. We disagree. *Wasson* specifically held the burden was on the defendant to show not only error, but resulting prejudice; *Carrigan* held the mere fact that some conversation occurs between a juror and a witness for the State does not necessarily prejudice a defendant. These cases merely stand for the proposition that if some extraneous influence is brought to the trial court's attention during trial, then it is incumbent on the trial judge to attempt to ascertain whether such influence was prejudicial. The mere fact that the court is required to examine an acknowledged error for prejudice is not, however, tantamount to a presumption of prejudice. Further, in the case relied on by *Wasson*, *State v. Salters*, 273 S.C. 501, 505, 257 S.E.2d 502, 504 (1979), this Court specifically recognized that "[s]uch a protective measure is required only upon a reasonable showing of the potential prejudicial effect of the publicity." Accordingly, we disagree

Moreover, subsequent to issuance of the Court of Appeals' opinion in this case, this Court decided *State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999) and *State v. Kelly*, 331 S.C. 132, 502 S.E.2d 99 (1998). *Aldret* involved jury misconduct in the form of premature deliberations. We held such misconduct did not warrant automatic reversal, and that the burden was on the defendant to demonstrate prejudice. In *Kelly*, we addressed the impact of a religious pamphlet circulated in the jury room during the penalty phase of a capital trial. We stated, "unless the misconduct affects the jury's impartiality, it is not such misconduct as will affect the verdict." In both *Aldret* and *Kelly*, the defendant failed to meet his burden of demonstrating prejudice.

We see no reason to distinguish between improper jury influences in the form of alternate juror participation, and influences such as the premature deliberations in *Aldret*, or the religious pamphlets in the jury room during the sentencing phase of *Kelly*.[3] Accordingly, we hold the burden was on Grovenstein to demonstrate prejudice, and the Court of Appeals adoption of a presumption of prejudice standard is reversed.[4]

with the Court of Appeals' assertion that case law has generally applied a presumption of prejudice analysis to improper jury influences.

**3.** Notably, in *United States v. Olano*, 507 U.S. 725, 738, 736–38, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993), the United States Supreme Court examined the presence of an alternate juror during deliberations as an external influence on the jury, akin to which the Court had generally analyzed for prejudicial impact. 507 U.S. at 738, 113 S.Ct. at 1780.

**4.** Our holding is consistent with those of numerous federal courts which uphold convictions notwithstanding actual participation by an alternate juror. *See United States v. Hill*, 91 F.3d 1064 (8th Cir.1996) (allowing alternate juror to deliberate during first two and one-half hours of deliberations did not entitle defendant to new trial as court would not presume prejudice); *United States v. Bendek*, 146 F.3d 1326 (11th Cir.1998), *cert. denied* — U.S. ——, 119 S.Ct. 1086, 143 L.Ed.2d 87 (1999) (permitting alternate to deliberate and return verdict with remaining jurors did not warrant reversal as alternate's presence did not affect integrity of proceedings); *United States v. Acevedo*, 141 F.3d 1421 (11th Cir.1998), *cert. denied* — U.S. ——, 119 S.Ct. 1048, 143 L.Ed.2d 54 (1999) (where two alternates deliberated and returned verdict with jury, trial courts instructions that regular jurors were to begin deliberations anew removed any threat of prejudice, notwith-

## 2. CURATIVE INSTRUCTIONS

■ Finally, the Court of Appeals held the state had not met its burden of rebutting the presumption of prejudice. Given our holding above, the burden was not on the state and we therefore reverse the Court of Appeals' holding on this issue. Moreover, we find the trial court's inquiry and instructions were sufficient to remedy the error.

■ An instruction to disregard incompetent evidence is usually deemed to have cured the error. *State v. Reid,* 324 S.C. 74, 476 S.E.2d 695 (1996). Moreover, jurors are presumed to follow the law as instructed to them. *State v. Ard,* 332 S.C. 370, 505 S.E.2d 328 (1998).

Here, when the trial court discovered the alternate's presence in the jury room, she was immediately removed and questioned regarding her participation. She advised the jury had taken one preliminary vote in which she had participated, and had discussed the case "a little bit... not much." The trial court then called the jury to the courtroom and instructed that it was the jury's responsibility to reach a verdict without regard to anything the alternate had said or done and then thoroughly inquired as to whether the jurors could put aside anything Coleman had said or done. Receiving no response, and with no further request for inquiry from counsel,[5] the jury was permitted to return to its deliberations; after deliberating for another 4 & ½ hours, the jury returned a guilty verdict. Under these circumstances, we find the trial court's inquiry and instructions to the jury were sufficient to cure any error. *Accord United States v. Acevedo,* 141 F.3d 1421 (11th Cir.1998) (dismissal of alternates permitted to deliberate and render verdict with jury not prejudicial where trial court instructed jury, minus the alternates, to begin deliberations anew).

■ For the benefit of bench and bar, we advise trial courts of this state, upon discovering an alternate has inadvertently

---

standing remaining jurors reached guilty verdict after "re-deliberating" for 5 more minutes).

5. Grovenstein attempts to distinguish our affirmance in *State v.. Kelly, supra,* on the grounds that, there, jurors were individually *voir dired* to ascertain the impact of the religious pamphlet. However, Groyenstein declined the trial court's invitation for further inquiry or instructions. Accordingly, he may not now complain. *Aldret, supra.*

been permitted into the jury room, to undertake precautionary measures similar to those taken by the trial court in this case. Initially, the trial judge should remove the alternate and inquire as to the extent of that juror's participation. The court should then conduct such *voir dire* as is necessary of the remaining jury panel, similar to that recently set forth by this Court in *Aldret*, to ascertain prejudice and, if practicable, tailor instructions requiring the jury to disregard the alternate's input and, in essence, requiring the jury to begin deliberations anew. If the trial court finds deliberations have proceeded too far, or that the alternate's impact upon remaining jury members may not be remedied, a mistrial should be had and a new trial ordered.

## CONCLUSION

We hold the burden is on the defendant to demonstrate prejudice from the presence of an alternate juror during jury deliberations, and the Court of Appeals erred in adopting a "presumption of prejudice" standard. Further, we find Grovenstein failed to meet his burden of demonstrating prejudice. Accordingly, the Court of Appeals' opinion is reversed and remanded.[6]

**REVERSED AND REMANDED.**

TOAL, Acting C.J., MOORE and BURNETT, JJ., and Acting Associate Justice JAMES C. WILLIAMS, Jr., concur.

---

6. As the Court of Appeals reversed Grovenstein's convictions, it did not address his remaining issues. Accordingly, we remand to the Court of Appeals for consideration of the other issues raised by Grovenstein.