### 15597

### STONE v. CITY OF FLORENCE

(28 S. E. (2d), 400)

September, 1942.

*Mr. J. D. Gilland, Mr. G. Badger Baker, Mr. George W. Keels* and *Mr. C. T. McDonald,* all of Florence, S. C., Counsel for Appellant City of Florence,

*Messrs. McEachin & Townsend,* of Florence, S. C., Counsel for Respondent,

December 6, 1943.

CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, delivered the unanimous Opinion of the Court:

This is an appeal by the defendant from an order granting a new trial upon the ground that two or three jurors, while the jury were viewing the premises, had conducted an experiment, and had thereby taken evidence outside of Court, to the prejudice of the losing party, a verdict having been later rendered in the case in favor of the defendant. The case was tried at the September, 1942, term of the Court of Common Pleas for Florence County before Hon. G. Duncan Bellinger, presiding Judge, and a jury.

The complaint of Olive D. Stone, the plaintiff above named, alleges among other things that on or about June 8, 1941, at about 10:30 P. M., the plaintiff after leaving her son's car, which had stopped a little west of the walkway

into her yard at her home in Florence, stepped off the curb to pick up a paper which had dropped out of the car, when her foot sank into an uncovered and unprotected drainhole just at and partially under the curb; and that she fell forward as her foot went into the hole, breaking two bones in her ankle and receiving a terrific shock due to the unexpectedness of the fall and the severe pain of the injured ankle. And she prays judgment against the City of Florence, the defendant above named, in the sum of $15,000.00 alleging that her injuries were due to the negligence, carelessness and mismanagement of the defendant in the maintenance and repair of its streets, in leaving open on a much used public street a drain or hole "more than eleven inches deep;" in failing to warn the public and plaintiff in particular by lights or other devices of the presence of a deep, uncovered hole at the edge of the curb; in constructing its street so as to leave a deep hole unprotected and uncovered and concealed to pedestrians by the curb at a place where they would step into the street in boarding cars or to cross from one side to the other; and there are other specifications of a like nature.

The answer of the defendant contains what is equivalent to a general denial, and also affirmatively alleges that the City of Florence constructed a system of drainage, "inclusive of the drainholes or inlets," according to the best engineering principles and standards; and that the plaintiff resided at the same place in the City of Florence from the time the drainage system was installed until and after the time she suffered her alleged injuries, and that she knew, or should have known, the type, location and construction of the drainage inlet complained of, and that if she was injured as alleged it was due to her sole negligence and carelessness.

It is unnecessary to review the testimony taken at the trial other than to observe that there is no issue whatever as to the type, measurements and contours of the curb, gutter and drainage basin involved. A full and uncontradicted description thereof was given by the surveyor sworn in be-

half of the plaintiff, and his map was introduced in evidence. And he testified definitely that the distance from the top of the curb to the bottom of the hole was ten and a half inches.

At the end of the first day of the trial, but before the plaintiff had closed her case, the jury was by agreement of counsel for the respective parties "allowed to go out this night and view the locus in question." And the presiding Judge carefully instructed them that they were to go around and "take in the whole ground situation so that you may have a picture in your minds as to what exists there when the testimony is put up, just as to the conditions and surroundings at the time of the occurrence."

And at the close of all the testimony, on the following day, on motion of counsel for the defendant, with the consent of counsel for the plaintiff, the jury was again sent to view the scene, the presiding Judge stating that counsel for the parties had "agreed for you to go out there and view the scene in the day time so that you can see it just as it is in the day time." And the Court further instructed the jury as follows: "Gentlemen, when you go out there you are to view it just as it stands now but bear in mind what the testimony was as to the condition of the night, etc., the time this occurred and try to visualize while you look at it what the conditions were on the occasion, taking into consideration whatever testimony is as to the condition of the night, etc."

Upon the return of the jury to the Court room the case was submitted to them after a very clear and comprehensive charge by the presiding Judge, who had in the course of the trial overruled the defendant's motions for a nonsuit and for a directed verdict. The jury returned a verdict in favor of the defendant, as hereinbefore stated.

Thereafter and in due time the attorneys for the plaintiff moved for a new trial upon the ground that while the jury was viewing the place "at least two and possibly three members of the jury stood on the curb and stepped in the hole

experimenting with the nature and condition of the hole or drain in controversy."

The motion is based upon affidavits of two Deputy Sheriffs and of the son of the plaintiff, each of whom used the identical language above quoted from the motion. There is also an affidavit by the plaintiff herself to the effect that she did not know of this alleged experiment until the day following the jury's verdict, when she was so informed by her son, and her statement to this effect is corroborated in his affidavit.

The presiding Judge granted the motion of the plaintiff for a new trial by his order dated February 13, 1943, and the exceptions of the defendant challenge the correctness of his conclusions; there being only one fundamental question involved in the appeal, to wit, whether the Court erred in holding that the jury, or certain members thereof, conducted an experiment or took testimony out of Court in the meaning of the law.

The statement contained in the motion and in the affidavits upon which it is based that jurors were experimenting with the nature and condition of the hole or drain has no factual support whatever unless it be the fact that "at least two and possibly three members of the jury stood on the curb and stepped in the hole." In other words, the statement that members of the jury were experimenting is manifestly just a conclusion. And in our opinion the mere fact that some of the jurors stood on the curb and stepped in the hole is wholly insufficient in itself to warrant the conclusion that an experiment was conducted, unless we are to enter into the field of surmise or conjecture. Such action on the part of two or three jurors may well have been purely incidental to their viewing the premises, remembering that the Court had instructed them to take in the whole ground situation so that they might have a picture in their minds as to the conditions and surroundings. Surely jurors will not be presumed to have been guilty of misconduct, and such an act

on their part seems too simple and natural to be deemed in any sense an experiment; and we are at a loss to see how it could have been in any wise prejudicial.

An experiment, as appears from the definition in the dictionaries, is a trial or special test made to confirm or disprove something doubtful; it is the action of trying or testing. If therefore what the jurors did in standing on the curb and stepping into the hole may be considered an experiment, what was its purpose? What was it intended to confirm or disprove? Manifestly it was *not* intended to prove that a grown man in possession of his faculties, in broad daylight, with the drainage basin or hole plainly visible before him, could deliberately stand upon the curb and step down into the hole, a distance of ten and one-half inches, without sustaining any injury; for this was perfectly obvious as a matter of ordinary common sense upon a mere observation of the curb and drainhole.

On the other hand, it was equally as obvious as a matter of ordinary common sense that a person who was unaware or unmindful of the location of the drainhole, and who in the nighttime unintentionally and unexpectedly stepped into it, would probably sustain a fall which might result in the fracture of a limb or other serious injury.

And in this connection we may say that while we agree with the Circuit Court that one of the issues in the cause was whether the plaintiff *did in fact* receive her alleged injuries at the time and place and in the manner which she claims to have been injured, we are, however, unable to find, upon an examination of the record, including the pleadings, evidence and charge, that there was any issue as to the *possibility* of injury occurring as described by the plaintiff.

The learned Circuit Judge concluded that the case at bar falls within the principles enunciated in *Baroody v. Anderson,* 195 S. C., 422, 11 S. E. (2d), 860; and a somewhat similar case, although a criminal case, to wit, *State v. Ballew,* 83 S. C., 82, 63 S. E., 688, 64 S. E., 1019, 18 Ann.

Cas., 569, is referred to in the arguments of counsel for the respective parties. Each of these cases clearly illustrates what is truly an experiment, conducted by a jury outside of Court and amounting to the taking of testimony, which would require the granting of a new trial.

In the *Baroody case* (195 S. C., 422, 11 S. E. (2d), 861), the jury while at the situs "directed the sheriff to go up around the curve in his automobile and to drive back around the curve at the rate of 35 miles per hour, and that this was done by the sheriff, the jury standing at the filling station in the position the Baroody truck was supposedly in just before the collision, and observing the car approaching them from around the curve." The statement just quoted shows that there was a complete and definite experiment in this attempt to re-enact the collision, and the Sheriff was in effect used as a witness. Hence it is clear that such conduct on the part of the jury was improper and required the granting of a new trial, because counsel for the parties had no opportunity to examine or cross examine the Sheriff or to check up on the accuracy of the methods of experimentation used, and they had no opportunity to argue as to the same to the Court or the jury.

The *Ballew case* relates to an instance even more flagrant. The defendants in that case were charged with and convicted of conveying into jail certain implements for the purpose of aiding prisoners to escape, and the main issue depended upon whether or not they could in a certain manner have aided prisoners in making their escape from the jail. The jurors were permitted at their own request "to go down to the jail and look at this place, and see if we can see whether it was knocked off or how it was cut" (83 S. C., 82, 63 S. E., 689, 18 Ann. Cas., 569) ; and we quote the following from the opinion which was delivered by Mr. Justice Woods: "While the jury were viewing the cell, Dukes, the prosecutor, exhibited to them the cord and piece of iron which the defendants had endeavored to prove was used by the prisoners to

draw the hatchet into the cell. Dukes placed the hatchet out of the cell and against the wall. The jury then tried to throw the iron attached to the cord so as to draw the hatchet into the cell; but failed, for the reason, as contended by defendants' counsel, that the hatchet was placed against the wall. * * * Juries may be allowed, in the discretion of the Court, to inspect the scene of the transaction under investigation, but it is improper for the jury to take the evidence by experimentation, or otherwise, outside of the Court. *Thompson v. Mallet*, 2 Bay, 94. There can be no doubt, therefore, that the action of the jury in this instance was improper." However, the Court sustained the action of the Circuit Judge in refusing a new trial because counsel for the defendants was present and saw the jury make the experiment, but failed to inform the Court of it until the motion for a new trial was made.

It therefore seems apparent that in the *Ballew case* the jury attempted· to reconstruct the situation, and by a detailed demonstration which involved making the. prosecutor an important witness attempted to reach a conclusion as to whether or not a certain thing could be done. This clearly amounted to an examination of witnesses or a demonstration with witnesses outside of the Court, as shown by the excerpt quoted from the opinion of Mr. Justice Woods.

But we think the foregoing statement of the facts in both the cited cases is sufficient to distinguish them from the case at bar, and that the Court below was in error in holding that the instant ·case comes within the principles enunciated in the *Baroody case* (that case being in precise conformity with the *Ballew case*).

Our research, as well as that of counsel, indicates that the decisions in other jurisdictions tangent to the question before us are not very numerous, although there are some which may be found, several of which are cited in the brief of counsel for the respondent. We quote the following general statement from 26 R. C. L., 1018: "While the practice

is not to be approved, yet it cannot be said to be prejudicial error for the jury to make measurements on the premises where the purpose thereof is merely to locate fixed monuments referred to in the evidence, as to which there is no dispute, or to take with them photographs and ascertain the points from which they were taken. There is no doubt that it is also improper for the jury on a view to make experiments, though the making of trifling experiments has been held nonprejudicial, or waived by the failure to object thereto."

The Kansas case of *City of Emporia v. Juengling,* 78 Kan., 595, 96 P., 850, 19 L. R. A. (N. S.), 223, cited in R. C. L., happens to be slightly similar to the case at bar in its facts, because the defendant in error had brought suit against the City of Emporia for damages claiming that he was injured by a fall caused by a wheel of his dray striking the cover of a manhole negligently permitted to project about eight inches above the level of the highway. The jury were allowed to view the place of the accident, and it was contended that they were guilty of misconduct during the view. The Court says: "The specifications of misconduct are that some of the jurors talked with an outsider about which way the sewer ran, that one made measurements at the manhole, and that another dug into the earth near it with a knife, and said that he had struck gravel or rock or something. It is apparent that no substantial prejudice could have resulted from any of these matters, and therefore there was no occasion for granting a new trial. 12 Enc. Pl. & Pr. p. 550; *City of Indianapolis v. Scott,* 72 Ind., 196, 205, and *Hardin v. State,* 40 Tex. Cr. R. 208, 221, 49 S. W. 607, are cases where more serious misconduct has been held nonprejudicial."

Our conclusion is that the order of the Circuit Court granting a new trial was based upon an error of law, because without evidentiary support, and that if the matter be deemed a discretionary one, the judicial discretion was im-

properly exercised, and hence the order should be set aside and reversed.

Reversed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE WILIAM H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.

MR. ASSOCIATE JUSTICE BAKER did not participate.