682 S.E.2d 489

The VESTRY AND CHURCH WARDENS OF the
CHURCH OF the HOLY CROSS, a South
Carolina Corporation, Respondent,

v.

ORKIN EXTERMINATING COMPANY, INC., Petitioner.

No. 26706.

Supreme Court of South Carolina.

Heard Feb. 3, 2009.

Decided Aug. 24, 2009.

442

Ernest A. Finney, Jr., of The Finney Law Firm, of Sumter, J. Rutledge Young, III, of Duffy & Young, of Charleston, Kenneth R. Young, of Young, Reiter, Keffer & Donnald, of Sumter, and LeeAnn Jones, of Powell Goldstein, of Atlanta, for Petitioner.

Thomas S. Tisdale, Jr., and David J. Parrish, both of Nexsen Pruet, of Charleston, for Respondent.

Chief Justice TOAL.

In this case, Respondents the Vestry and Church Wardens of the of the Church of the Holy Cross ("Holy Cross") filed suit against Petitioner Orkin Exterminating Company ("Orkin") for breach of contract. The case was tried, and the jury returned a verdict for Orkin. Shortly thereafter, the trial judge informed the parties that there were allegations of juror misconduct. Holy Cross moved for a new trial. After examining the jurors, the trial judge denied the motion. The court of appeals reversed and remanded the case for a new trial. *See The Vestry & Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Company, Inc.*, 373 S.C. 200, 644 S.E.2d 735 (Ct.App.2007). We granted Orkin's petition for a writ of certiorari to review the court of appeals' decision.

## FACTUAL/PROCEDURAL BACKGROUND

The Church of the Holy Cross is located in Sumter and listed on the National Historic Register as a National Historic Landmark. In 1976, Holy Cross contracted with Orkin to annually treat and inspect the church for termites. Holy Cross discovered termite damage in 2000 and brought this suit for breach of contract.

A jury trial was conducted in August 2005. Per his usual instructions, the trial judge instructed the jurors before swearing them in that they should not discuss the case among

themselves or with any other person, and that they should not undertake any investigation into the facts or law not presented to them during the course of the trial. At the end of a two-week trial, the jury returned a verdict in favor of Orkin.

Three days later, the trial judge sent a letter to all parties to inform them of a possible case of juror misconduct. The judge explained that he was contacted the morning after the trial by alternate juror Sherry Babb. Babb informed him that juror Vicki Abrams had allegedly violated his instructions in the following instances: (1) early in the trial, Abrams questioned aloud the instructions not to talk about the case and made comments to other jurors in spite of these instructions; (2) she stated that "the historic people" "have money" and that Holy Cross was trying to get someone else to "pay their bills" when everyone knows that "old buildings fall down"; (3) she stated that she did not know why she had to hear both sides of the case and that she had discussed the case with her mother, who confirmed that "historic people" have money and should "clean up their own mess"; (4) she said she had talked to a painter who told her that termite damage can cause building walls to collapse; (5) she said that Holy Cross should tear down the church and bring in a double wide; and (6) on the day of deliberation, Abrams told jurors that she had prayed with her minister about the case, and that she had driven to Holy Cross over the weekend and that it looked fine to her. Babb also informed the judge that the jurors admonished Abrams for violating his instructions and that the jurors paid little attention to Abrams' comments.

Holy Cross filed a motion for new trial. The trial judge summoned the jurors to appear at the courthouse on September 7, 2005, for sworn examinations. The trial judge found that Babb's allegations were "in large measure . . . corroborated by" the jurors' testimony. One juror's testimony indicated that Abrams had commented that her minister had told her that "the church should take care of the church," and that "churches need to stick together." However, none of the jurors indicated that their final deliberations were affected by Abrams' misconduct.

On November 10, 2005, the judge held a hearing on the issue of whether Abrams should be held in contempt of court.

Abrams's court-appointed attorney denied that she had committed any premeditated wrongdoing. Nevertheless, the judge found Abrams to be in contempt of court.

On February 22, 2006, the judge issued an order denying Holy Cross's motion for new trial. The judge found that Holy Cross failed to "demonstrate prejudice affecting the impartiality of the verdict," and that "[t]he statements and actions by Ms. Abrams were not of a kind to impermissibly influence the jury or effect the verdict." The judge noted that there was nothing Abrams could have learned from driving to the church that was not already apparent from photographs in evidence. Likewise, the judge found that the statement made by the painter was consistent with statements made by Holy Cross's witnesses and therefore did not unduly prejudice Abrams's deliberation. Finally, the judge found that there was no evidence that Abrams's comments shaped the final deliberations or improperly influenced the other jurors, in light of the testimony indicating that the jurors admonished Abrams, "laughed off" her comments, and generally paid her little attention. The judge concluded that, "having conducted an extensive individual voir dire of each juror and having viewed the conduct of the offending juror, this Court has found no indication that the jury's unanimous verdict was compromised, and [Holy Cross] has not made the showing of any prejudice by clear and convincing evidence, as required by the applicable case law." Holy Cross appealed to the court of appeals.

In a split decision, the court of appeals reversed, holding that the trial judge erred in focusing his analysis on the eleven other jurors and in failing to adequately consider the question of whether Abrams's own conduct, which revealed her to be "unconcerned about granting [Holy Cross] the fair and impartial trial to which it was entitled," deprived Holy Cross of its right to a fair trial. In the opinion of the majority, under the circumstances of this case, "where at least one of [Abrams' acts of misconduct] was deemed so egregious by the trial judge that he punished [her] for criminal contempt, the failure of the trial judge to grant a new trial based upon those acts of misconduct amounts to an abuse of discretion." 373 S.C. at 206, 644 S.E.2d at 739. The dissent concluded that the trial judge conducted the appropriate procedure upon being presented with an allegation of misconduct, and did not err in

denying Holy Cross's motion for new trial. We granted a writ of certiorari to review the court of appeals' decision. The following questions are presented for our review:

I. Did the court of appeals apply an incorrect standard of law regarding jury misconduct?

II. Did the court of appeals err in finding that the trial judge abused his discretion in denying Holy Cross's motion for new trial?

## STANDARD OF REVIEW

 The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law. *State v. Harris,* 340 S.C. 59, 63, 530 S.E.2d 626, 627–28 (2000). The trial court is in the best position to determine the credibility of the jurors; therefore, this Court grants broad deference on this issue. *State v. Council,* 335 S.C. 1, 12, 515 S.E.2d 508, 514 (1999).

## LAW/ANALYSIS

Orkin alleges that the court of appeals applied an incorrect standard of law regarding jury misconduct and erred in finding that the trial judge abused his discretion in denying Holy Cross's motion for new trial. We agree on both counts.

Under South Carolina law, litigants are guaranteed the right to an impartial jury. *See* S.C.Code Ann. § 14–7–1050 (2008) ("in all civil cases any party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury."). If a potential juror has an interest in the lawsuit such that she is "not indifferent in the cause," the juror shall be deemed incompetent to serve on the jury. *See* S.C.Code Ann. § 14–7–1020 (2008).

 Misconduct that does not affect the jury's impartiality will not undermine a verdict. *Harris,* 340 S.C. at 63, 530 S.E.2d at 627. In determining whether outside influences have affected the jury, relevant factors include: (1) the number of jurors exposed, (2) the weight of the evidence properly before the jury, and (3) the likelihood that curative measures were effective in reducing the prejudice. *Id.* (citing *Kelly,* 331

S.C. at 141–42, 502 S.E.2d at 104). The trial court has broad discretion in assessing allegations of juror misconduct, and should declare a mistrial only when absolutely necessary. *Council*, 335 S.C. at 12, 515 S.E.2d at 514. Instead, the trial court should exhaust other methods to cure possible prejudice before aborting a trial. *Kelly*, 331 S.C. at 141–42, 502 S.E.2d at 104. In order to receive a mistrial, the moving party must show error and resulting prejudice. *Id.*

## I. *Standard of Law in Cases of Juror Misconduct*

■ Orkin first argues that the court of appeals applied the wrong standard of law by applying a general standard of "fundamental fairness" rather than the more specific standard of actual prejudice.[1] Although considerations of "fundamental fairness" are relevant to analyses of jury misconduct, we agree that the court of appeals failed to grant due deference to the trial judge's factual finding that Holy Cross did not suffer actual prejudice.

■ This Court has, in the past, used the language of "fundamental fairness" to describe the constitutional implications of juror misconduct. *See Shumpert v. State*, 378 S.C. 62, 661 S.E.2d 369 (2008) (holding that juror testimony involving internal misconduct "may be received only when necessary to ensure fundamental fairness"); *State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999) (holding that premature jury deliberations "involve a matter of fundamental fairness."). However, not all juror misconduct impinges upon the fundamental fairness of a trial:

> A defeated party is not entitled to a new trial for every act of misconduct by or affecting the jury, as such misconduct ... does not *ipso facto* justify the grant of a new trial; but in order that a new trial may be granted on such ground the misconduct of the jury must relate to a material matter in dispute and must be such as to indicate an influence of bias or prejudice in the minds of the jurors.

C.J.S. *New Trial* § 54 (1998). *See also State v. Grovenstein*, 335 S.C. 347, 352, 517 S.E.2d 216, 218 (1999) (holding that

---

1. "The basic issue here, as we see it, is whether the juror misconduct in question affected Holy Cross' right to fundamental fairness at trial." *Holy Cross*, 373 S.C. at 204, 644 S.E.2d at 737.

misconduct does not entitle a party to mistrial unless it affects the verdict).

The court of appeals was thus entirely correct to discuss "fundamental fairness" in the context of jury misconduct. The court erred, however, by invoking the premise of "fundamental fairness"—in the face of the trial judge's determination that there was no evidence of actual prejudice—to support its conclusion that Abrams' misconduct was "so egregious" as to *ipso facto* justify the grant of a new trial. The majority's error is most evident from this passage:

> Although [Abrams] may not have learned anything from her visit to the site that she did not already know and her report to the other jurors of her actions may not have had any impact on them, [her] attempt to conduct an unsanctioned investigation into the facts of this case, when viewed with her other acts and comments, shows a juror unconcerned about granting Holy Cross the fair and impartial trial to which it was entitled.

373 S.C. at 207, 644 S.E.2d at 737. The dissent correctly observed that the majority placed too much emphasis on the nature of Abrams' undoubtedly improper conduct and neglected the determinative question of whether this conduct deprived Holy Cross of a fair trial. *Id.* Indeed, in order to receive a mistrial, Holy Cross bore the burden of showing that Abrams' conduct deprived it of a fair and impartial trial, not merely that Abrams was "unconcerned" about granting it a fair and impartial trial. The trial judge conducted an extensive inquiry and concluded that, although improper, Abrams' misconduct did not actually influence the jury's verdict. To the extent that the majority of the court of appeals reversed this determination because Abrams' lack of "concern" for her role as an impartial juror violated "fundamental fairness," it was in error.

## II. *Abuse of Discretion*

■ Orkin next argues that the court of appeals erred in holding that the trial judge abused his discretion in finding that Abrams' conduct did not deprive Holy Cross of a fair and impartial trial. We agree.

As noted above, the majority's reliance on an improper standard led it to conclude that "the failure of the trial judge to grant a new trial based upon [Abrams'] acts of misconduct amounts to an abuse of discretion." *Id.* In so holding, the majority appeared to be of the opinion that Abrams' participation in the deliberations was *ipso facto* evidence that her own bias tainted the jury's verdict. Setting aside the legal problems with this conclusion—which are addressed above—it indicates that the majority failed to fully consider the facts as well. Specifically, the trial judge examined the effect of Abrams's misconduct on the other jurors' deliberations *as well as her own.* The judge's thorough fact-finding inquiry led him to the conclusion that Abrams did not expose herself to any evidence not already in the record.

The trial judge thus found that there was no clear and convincing evidence that any of the twelve jurors—including Abrams—were improperly influenced by Abrams' misconduct. Bearing in mind the well-settled law that the refusal or grant of a mistrial "lies within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law," we hereby reverse the court of appeals. *Harris,* 340 S.C. at 63, 530 S.E.2d at 627–28.[2]

---

2. A review of this Court's case law with regard to juror misconduct reveals few civil cases and even fewer instances where this Court has affirmed the finding that a mistrial was warranted. *See Shumpert v. State,* 378 S.C. 62, 661 S.E.2d 369 (2008) (where a juror's affidavit, alleging that deliberating jurors improperly considered defendant's failure to testify as evidence of guilt, did not raise sufficient questions of fundamental fairness so as to be admissible evidence of jury misconduct); *State v. Pittman,* 373 S.C. 527, 647 S.E.2d 144 (2007) (where a guilty vote by one juror was based on another juror's reminder that everyone had to vote together to return a unanimous verdict, and a guilty vote by a second juror was based on other jurors' insistence, were not instances of internal influence that implicated fundamental fairness such that defendant was entitled to a new trial); *Alston v. Black River Elec. Co-op.,* 345 S.C. 323, 548 S.E.2d 858 (2001) (holding that members of an electric cooperative should be *per se* disqualified from serving on a jury when the cooperative is a party); *State v. Harris,* 340 S.C. 59, 530 S.E.2d 626 (2000) (holding that juror's misconduct in consulting legal dictionary for definitions of "malice aforethought" and "manslaughter" did not entitle defendant to new trial); *State v. Aldret,* 333 S.C. 307, 509 S.E.2d 811 (1999) (holding that although premature jury deliberations could affect fundamental fairness of a trial, defendant was procedurally barred from receiving a new trial); *State v. Grovenstein,*

CONCLUSION

For the reasons stated herein, we hereby reverse the court of appeals and reinstate the verdict for Orkin.

WALLER, J., and Acting Justices E.C. BURNETT, III and ALISON R. LEE, concur. PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent and would affirm the Court of Appeals. I agree with the Court of Appeals that it takes only one juror to deprive the parties of a fair and impartial trial. While Abrams may not have influenced the other jurors, her actions and words are undeniable evidence of a juror who blatantly failed to honor her oath or to follow the instructions given her by the trial judge. I therefore agree with the majority of Court of Appeals and would uphold the grant of a new trial.

---

335 S.C. 347, 517 S.E.2d 216 (1999) (holding that an alternate juror's presence in jury room during first 20 to 30 minutes of deliberations was not grounds for mistrial); *State v. Council,* 335 S.C. 1, 515 S.E.2d 508 (1999) (holding that the trial judge did not abuse his discretion in death penalty case by refusing to disqualify juror, who was initially uncertain as to whether she could presume defendant was innocent, where each time judge clearly explained law juror affirmed she could presume defendant innocent); *State v. Kelly,* 331 S.C. 132, 502 S.E.2d 99 (1998) (holding that a juror's misconduct in sharing pro-death penalty pamphlet with other jurors during penalty phase did not violate defendant's right to fair trial); *State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989) (where the fact that two jurors read newspaper article discussing alleged, extraneous crimes by defendant and summarizing testimony did not entitle defendant to mistrial); *Stone v. City of Florence,* 203 S.C. 527, 28 S.E.2d 409 (1943) (where, in action against city for injuries sustained by stepping into an unprotected drain-hole, some of the jurors visited the scene of accident and stepped from the curb into the hole, plaintiff was not entitled to a new trial on this ground).