# The Supreme Court of South Carolina

Philip Ethier and Jeanne Ethier, Petitioners,

v.

Fairfield Memorial Hospital; Guy R. Bibeau, M.D.;
Tuomey Medical Professionals, Inc.; and Pee Dee
Emergency Medical Associates, PA, Defendants,

Of whom Guy R. Bibeau, M.D. is the Respondent.

Appellate Case No. 2018-001435

--------------------

## ORDER

--------------------

The petition for rehearing is denied. However, the attached opinion is substituted
for the previous opinion, which is withdrawn.

| | |
|---|---|
| s/ Donald W. Beatty | C.J. |
| s/ John W. Kittredge | J. |
| s/ Kaye G. Hearn | J. |
| s/ John Cannon Few | J. |
| s/ James E. Lockemy | A.J. |

Columbia, South Carolina

May 27, 2020

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Philip Ethier and Jeanne Ethier, Petitioners,

v.

Fairfield Memorial Hospital; Guy R. Bibeau, M.D.; Tuomey Medical Professionals, Inc.; and Pee Dee Emergency Medical Associates, PA, Defendants,

Of whom Guy R. Bibeau, M.D. is the Respondent.

Appellate Case No. 2018-001435

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal From Fairfield County
Roger L. Couch, Circuit Court Judge

———————

Opinion No. 27953
Heard September 24, 2019 – Filed May 11, 2020
Re-Filed March 27, 2020

———————

## REVERSED AND REMANDED

———————

Ronald Brian Cox and Robert David Proffitt, of Proffitt & Cox, LLP, of Columbia, for Petitioners.

David Cornwell Holler, of Lee, Erter, Wilson, Holler & Smith, LLC, of Sumter, Stanley Lamont Myers, Sr., of

Moore Taylor Law Firm, P.A., of West Columbia, Andrew F. Lindemann, of Lindemann, Davis & Hughes, PA, of Columbia, and G. Murrell Smith, Jr., of Smith Robinson Holler DuBose Morgan, LLC, of Sumter, all for Respondent.

---

**JUSTICE HEARN:** In this medical malpractice action, Petitioners Phillip and Jeanne Ethier appeal a verdict in favor of Respondent Dr. Guy Bibeau, who misdiagnosed a popliteal aneurysm as a probable spider bite. Petitioners contend the court of appeals erred in affirming the trial court's decision to deny granting a new trial based on intentional juror concealment and premature deliberations. We reverse and remand for a new trial.

## FACTUAL BACKGROUND

### I.    Facts

In April 2011, Philip Ethier went to the emergency room at Fairfield Memorial Hospital after he felt a sudden, excruciating pain jolt up his leg as he walked to a shed in his backyard. Rather than drive to a nearby hospital in Chester County, Ethier traveled to Fairfield Memorial because he recently had been hired as a licensed practical nurse in its emergency department. Upon arrival, a certified nurse assistant examined his vitals, and Ethier informed her that his leg and foot were in severe pain—about a 7 or 8 on a scale of 10. She noted on a medical intake form that his "feet started to turn ecchymotic."[1] According to the nurse's notes, she examined Ethier's pedal and post-lib pulses, but the corresponding section was left blank.[2]

Thereafter, Bibeau examined Ethier, diagnosing him with a probable spider bite—a "ridiculous" diagnosis according to the plaintiff's expert at trial, especially since neither Ethier nor the nurse assistant mentioned that as a possible scenario and no one ever identified a bite mark. Bibeau informed Ethier to follow-up with his

---

[1] Related to ecchymosis, which is "a discoloration due to extravasation of blood, as in a bruise." *See* Ecchymosis, Dictionary.com, https://www.dictionary.com/browse/ecchymosis.

[2] These pulses are taken in a patient's foot, where according to the Ethiers' expert, an abnormal reading may indicate a vascular issue.

primary physician if symptoms changed and was given similar information upon discharge that afternoon.

Over the next six weeks, Ethier's symptoms gradually improved, allowing him to return to work at the hospital. However, during that time, the tip of one of the toes on his right foot turned black, and according to Ethier, he spoke with Bibeau and another doctor a couple of times during his shifts at the hospital. The occurrence and extent of these "curbside consultations" were disputed at trial. Ethier's initial symptoms returned in late May 2011, requiring him to return to the emergency room. This time, however, Ethier went to a hospital in Chester County, and doctors immediately realized Ethier was suffering from an aneurysm. Shortly thereafter, Ethier was transported by ambulance to a hospital in Charlotte, where vascular surgeons first attempted noninvasive measures to alleviate the blood clots caused by the vascular injury. After these measures failed, surgeons elected to perform invasive surgery, requiring them to cut an incision from his hip to above his ankle.

Due to the severity of the surgery, Ethier suffered intense pain, and trial testimony indicated he is no longer as active as before. Further, while Ethier attempted to return to work as a nurse, the pain eventually prevented him from doing so. Additionally, his wife testified that his disability strained the close companionship they previously enjoyed in their marriage.

The jury found Bibeau negligent and awarded $1,250,000 in economic damages and $500,000 in non-economic damages to Philip Ethier. Additionally, the jury awarded $250,000 in damages to Jeanne Ethier for loss of consortium. However, because the jury apportioned only 30% of the fault to Bibeau and the remaining 70% to Philip Ethier, the trial court entered a defense verdict on both claims. The Ethiers filed a motion to alter or amend the judgment, asserting Jeanne Ethier was entitled to recover the full amount on her loss of consortium claim, but the trial court disagreed, finding Philip Ethier's comparative negligence barred recovery for both claims.

## II.    *Allegations of Juror Misconduct*

During voir dire, the court asked prospective jurors whether they ever had a "close social or a personal relationship" with either the Ethiers or Dr. Bibeau. After no one indicated they did, the court asked the same question about the list of potential witnesses, which included Jerilyn Wadford and Rhonda Gwynn, two nurses who examined Ethier, and the CEO of Fairfield Memorial, Mike Williams. To this question, juror Teresa Killian informed the court, "I used to work at Fairfield

Memorial Hospital with Mike Williams." The court responded, "[s]o you knew him from that employment," which Killian confirmed. Killian never disclosed that she also worked with Bibeau or the two nurses.

After trial, the Ethiers' counsel learned Killian previously worked with Bibeau and the nurses, and that Killian had discussed her knowledge of them with other jurors. One of the jurors, Sandra Carmichael, attested Killian stated she knew the nurses as well as Bibeau, and that both "were very careful and thorough, and if they said they did something, they did it." Carmichael also noted that during jury breaks, Killian repeatedly discussed Bibeau's skills as a doctor.

The Ethiers' counsel filed an affidavit with the trial court, which then held a hearing pursuant to *State v. Aldret*, 333 S.C. 307, 509 S.E.2d 811 (1999), to determine the scope of Killian's conduct. The court first called Killian, who denied making any of the alleged statements. She also indicated that she only disclosed knowing Mike Williams because he had treated her son nearly sixteen years earlier. Further, she added that because the question only called for a close social or personal relationship, she did not include Bibeau or the nurses when she mentioned Williams at trial. Thereafter, the court called the remaining members of the jury, and nine testified they specifically recalled Killian informing them she had worked with Bibeau and the nurses. Four jurors said Killian vouched for the skill, proficiency, and truthfulness of all three during jury breaks. Carmichael testified that Killian's statements affected her vote, as she initially believed Bibeau was more negligent. Nevertheless, while the trial court found Killian had engaged in premature deliberations, it found no prejudice. The court also believed Killian did not intentionally conceal that she knew Bibeau and the three nurses through her previous employment, contending the question was ambiguous because it only addressed "close personal or social relationships." Accordingly, the trial court denied the Ethiers' motion for a new trial.

The Ethiers appealed to the court of appeals, which, in an unpublished opinion, affirmed the denial of a new trial based on juror misconduct and the trial court's decision that Philip Ethier's comparative negligence barred Jeanne Ethier's loss of consortium claim. We granted the Ethiers' petition for a writ of certiorari.

## ISSUE

Did the court of appeals err in affirming the trial court's denial of Petitioner's motion for a new trial based on juror misconduct for premature deliberations?

## LAW/ANALYSIS

The Ethiers contend Killian's premature deliberations affected the fundamental fairness of the trial. Conversely, Bibeau asserts evidence of premature deliberations is inadmissible and regardless, the trial court did not abuse its discretion in denying the motion for a new trial.

Ordinarily, juror testimony concerning juror misconduct is not admissible unless the allegations of misconduct pertain to external influences. *Shumpert v. State*, 378 S.C. 62, 66, 661 S.E.2d 369, 371 (2008) ("For a considerable period of history, the rule in South Carolina was that a juror's testimony was not admissible to prove either a juror's own misconduct or the misconduct of fellow jurors."). Rule 606, SCRE, also favors exclusion over inclusion of juror testimony pertaining to internal misconduct. However, a well-recognized exception exists where the misconduct affects the fundamental fairness of the trial. *State v. Hunter*, 320 S.C. 85, 88, 463 S.E.2d 314, 316 (1995) ("Normally, juror testimony involving internal misconduct is competent only when necessary to ensure due process, i.e. fundamental fairness."). Premature deliberations fall within this exception. *State v. Aldret*, 333 S.C. 307, 312, 509 S.E.2d 811, 813 (1999) ("[W]e hold premature jury deliberations may affect 'fundamental fairness' of a trial such that the trial court may inquire into such allegations and may consider affidavits in support of such allegations."). Once the court determines that premature deliberations occurred, the moving party bears the burden of demonstrating prejudice, which involves an analysis as to whether the juror misconduct actually affected the verdict. *Id.* at 315, 509 S.E.2d at 815 ("[W]e hold the burden is on the party alleging premature deliberations to establish prejudice."). Finally, the trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *Id.*

Because premature deliberations may affect the fundamental fairness of the trial, the affidavit and juror testimony are admissible. Accordingly, our inquiry concerns whether the trial court abused its discretion in finding Killian's conduct did not prejudice the Ethiers. In *Aldret*, we imposed the burden to prove prejudice on the party alleging premature deliberations. *Id.* We did so in part because we previously required a showing of prejudice in the context of external influences and based on the fact that the majority of jurisdictions have imposed prejudice on internal influences. *Id.* at 313–15, 509 S.E.2d at 814–15. While the burden to demonstrate prejudice is high,[3] when evidence strongly supports the fact that votes were changed

---

[3] The Ethiers did not challenge the trial court's use of the clear and convincing evidence standard.  Accordingly, because this issue is not properly before the Court,

as a result of a juror's impermissible conduct, we cannot countenance such a tainted verdict.

We have previously upheld a trial court's finding of no prejudice even when there was direct evidence that votes were changed. *Vestry & Church Wardens of Church of Holy Cross v. Orkin Exterminating Co.*, 384 S.C. 441, 682 S.E.2d 489 (2009). In *Vestry*, a church filed suit against an exterminating company for breach of contract after members discovered termite damage following an inspection. *Id.* at 443, 682 S.E.2d at 490–91. The jury returned a verdict in favor of the exterminating company, but the trial court soon learned of potential juror misconduct. *Id.* at 443–44, 682 S.E.2d at 491. As a result, the court held a hearing, where it questioned jurors about the alleged misconduct. It became apparent that a juror violated virtually every instruction given by the trial court. *Id.* For example, the juror ignored the court's instruction not to discuss the case during the trial with anyone, including fellow jurors. Specifically, the juror informed her fellow jurors early and often of her view of the case, referring to the church members as "historic people" with money who should "clean up their own mess." *Id.* The juror did not understand why she had to hear both sides of the case, and she mentioned that she had consulted with a painter about the termite damage. Stunningly, she even drove to the church to look at the damage prior to deliberations and based on her own inspection, determined it was in good condition. *Id.* The trial court actually held her in criminal contempt of court; yet nevertheless, the court denied the church's motion for a new trial, inexplicably finding the church was not prejudiced—a decision which this Court upheld. *Id.* at 445, 448–49, 682 S.E.2d at 491, 493–94. Because *Vestry* stands for the principle that less than twelve fair and impartial jurors is perfectly acceptable and is an anomaly in our jurisprudence, we overrule it.

In many ways, Killian's behavior mirrors that of the juror in *Vestry*. The trial court initially recognized the seriousness of Killian's conduct, and therefore, held an *Aldret* hearing to probe the extent of her statements. At the hearing, nine jurors testified they heard Killian state during breaks at trial that she worked at the hospital with Bibeau and the nurses. Four jurors testified Killian vouched for the skill of all three by stating they were "good, careful, or thorough," and if Bibeau did not take foot pulses, then "the nurse" did. Further, four jurors noted Killian vouched for the truthfulness and credibility of all three, asserting Killian informed the jury during breaks that if they "said they did something, they did it."

---

we leave for another day the standard of proof to be applied when determining whether a party has suffered prejudice as a result of alleged juror misconduct.

Despite this testimony, Killian denied discussing the case prematurely and noted her relationship with Bibeau and the nurses did not impact her vote. The trial court found Killian engaged in premature deliberations, but it concluded the Ethiers failed to prove the requisite prejudice in order to grant a new trial. While we commend the trial court for its thorough post-trial evidentiary hearing, it is clear Killian's conduct severely hampered the fundamental fairness of the trial, and that the circumstances here demonstrate prejudice. Carmichael testified that Killian's comments directly affected her vote, as she initially believed Bibeau was more negligent. Indeed, in response to the court's prejudice inquiry, Carmichael stated,

> **Carmichael:** Because when we got back there . . . several of us was leaning towards in favor of [Philip Ethier] and she kept on repeating the reputation and some of the jurors changed their minds and left only two of us with [Philip Ethier], and basically was like, well, if she worked with [Bibeau] and she knew that he was a good doctor . . .

> **The Court:** Okay, so it did have some effect on your ultimate decision?

> **Carmichael:** Yeah. She stated several times that she knew him and he was a good, reliable doctor.

Killian's intentional disregard of the trial court's repeated instructions not to engage in premature deliberations directly affected the verdict. Killian discussed matters that were not introduced as evidence, and bolstered other evidence that had been admitted. Further, Killian's conduct is egregious, as she repeatedly discussed the case after being instructed not to do so. *Aldret*, 333 S.C. at 311, 509 S.E.2d at 813 (holding premature deliberations may affect the fundamental fairness of a trial in part because the Court has "routinely held instructions which invite jurors to engage in premature deliberations constitute reversible error"). Moreover, the content of her statements is equally troubling, as it concerns the most hotly disputed fact at trial—whether Bibeau checked Ethier's foot pulses. Ethier's expert testified his symptoms presented a classic indication of a vascular issue, which a simple check of his foot pulse would have revealed, and the medical forms do not indicate these pulses were taken. In essence, Bibeau received the benefit of having a character witness on the jury who could attest to his skill without being subjected to cross-examination. This benefit is not speculation, as Killian directly affected Carmichael's vote. Although we have been reluctant to reverse a trial court's denial of a motion for a new trial based on juror misconduct, Killian's disregard of her oath, with resulting prejudice, heightens the error and necessitates the step we take here.

Because we find this issue dispositive, we decline to address the Ethiers' remaining issues.[4] *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address additional arguments after reaching a dispositive issue). While we do not reach the effect of Philip Ethier's negligence on his wife's consortium claim, we do note that South Carolina has historically aligned itself with the minority of jurisdictions which hold a loss of consortium claim and the underlying negligence action are two separate claims. *Lee v. Bunch*, 373 S.C. 654, 647 S.E.2d 197 (2007) ("In South Carolina, claims for personal injuries and for loss of consortium are separate and distinct."). However, the majority of jurisdictions recognize that a spouse's negligence reduces the damages award for loss of consortium. *See Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 108–09 (Tenn. 1996) ("The clear majority of jurisdictions…hold that a loss of consortium award must be reduced, and may be barred, by the comparative fault of the physically injured spouse."). We do not reach this issue today because the juror misconduct infected both actions, and a new trial as to both claims is warranted.

## CONCLUSION

We reverse the court of appeals' decision and remand for a new trial as to all of the Ethiers' claims.

**REVERSED AND REMANDED.**

**BEATTY, C.J., KITTREDGE, FEW, JJ., and Acting Justice James Edward Lockemy, concur.**

---

[4] The Ethiers also contended the trial court erred in failing to grant a new trial based on juror concealment when Killian did not disclose during voir dire her working relationship with Bibeau and the two nurses, and it erred in barring recovery for Wife's loss of consortium claim when the jury found her husband 70% at fault.